2008 UT App 277

**ARBOGAST FAMILY TRUST, by and through Rodney J. ARBOGAST as Trustee, Plaintiff and Appellee,**

**v.**

**RIVER CROSSINGS, LLC, a Nevada limited liability company, Defendant and Appellant.**

No. 20070395–CA.

Court of Appeals of Utah.

July 17, 2008.

Scott M. Lilja and Nicole M. Deforge, Salt Lake City, for Appellant.

Chad J. Utley and Tyler T. Todd, St. George, for Appellee.

Before GREENWOOD, P.J., McHUGH and ORME, JJ.

OPINION

McHUGH, Judge:

¶ 1 River Crossings, LLC (River Crossings) appeals the trial court's denial of its

1. River Crossings' counsel on appeal did not represent River Crossings during any of the pro-

rule 60(b) motion to set aside a default judgment. *See* Utah R. Civ. P. 60(b). We affirm.

BACKGROUND

¶ 2 Arbogast Family Trust (Arbogast) provided River Crossings a $2,450,000 loan. The loan was to be repaid with interest by September 16, 2005. If repayment was more than five days late, the loan agreement provided for "[a] late payment penalty of [s]ix percent." River Crossings repaid the loan in full on October 7, 2005. Because the loan was not repaid within five days of September 16, 2005, Arbogast claimed it was entitled to a late payment penalty of over $148,000, plus interest. River Crossings stated that it was granted an extension of time to repay the loan and therefore contested that it owed any additional amount. Because of the dispute between the parties, River Crossings directed that approximately $178,000 be held in escrow until the dispute was resolved. These funds were eventually deposited with the trial court.

¶ 3 On January 10, 2006, Arbogast filed a complaint for declaratory judgment, seeking to obtain the funds held in escrow. Because River Crossings had previously informed Arbogast that it was represented by counsel and because of difficulties serving River Crossings directly, the trial court granted Arbogast's motion for alternate service. Accordingly, Arbogast served River Crossings' Nevada legal counsel, Black, LoBello & Sparks (BLS), with the complaint.[1] Counsel for Arbogast granted BLS at least two extensions to make a settlement offer, to seek Utah counsel, or both. According to River Crossings, counsel for Arbogast then told BLS in June 2006 that he would not seek default without first notifying it.

¶ 4 On June 28, 2006, BLS communicated a settlement offer to Arbogast's counsel. The next day, counsel for Arbogast sent a letter to BLS rejecting the offer. The letter also stated as follows:

My client has previously granted your client an extension of time within which to answer the complaint. However, given the

ceedings in the trial court.

present state of the case, I am, on behalf of my client, hereby · requesting that your client file an Answer to the complaint within twenty (20) days of the date of this letter.

¶ 5 On June 30, the BLS attorney primarily responsible for the River Crossings matter was terminated. However, the June 29 letter was addressed to two other members of the firm who had taken responsibility for the case. On July 25, River Crossings' managing member sent an e-mail to Arbogast's principal. Although the e-mail requested that Arbogast's principal call River Crossings' managing member in order to "discuss the direction of [the] lawsuit," no further communication occurred. Six days later— approximately four months after service of the complaint and more than thirty days after the June 29 letter requesting an answer—Arbogast obtained a certificate of default from the court clerk. Arbogast did not provide River Crossings a copy of this certificate or its subsequent request for default judgment. On August 10, the trial judge entered a default judgment. Notice of the judgment was sent to River Crossings on August 15.

¶ 6 River Crossings filed a rule 60 motion to set aside the default judgment on September 26, 2006, and arguments were held February 21, 2007.[2] During arguments, River Crossings' Utah legal counsel acknowledged that "this is a close case." Counsel also conceded that a formal appearance had not been entered and that "[Arbogast] didn't need to give notice [of the default motions] under Rule 5(2)(a)." In fact, counsel declared that he was "not claiming that because an appearance was made notice should have been given." The trial court determined "that [River Crossings'] actions and inactions in this matter d[id] not rise to the level of excusable neglect, inadvertence, surprise or mistake." The trial court also found that although BLS did not formally appear in the action, "counsel's notification and communications with [Arbogast]'s counsel constitute

an appearance and there was adequate notice . . . given to [River Crossings], pursuant to the June 29, 2006 letter." Accordingly, the court denied River Crossings' motion. River Crossings appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 River Crossings presents three arguments on appeal. First, River Crossings argues that the default judgment should have been set aside because Arbogast failed to provide the notice required by rule 5(a) of the Utah Rules of Civil Procedure. "[T]he interpretation of a rule of procedure is a question of law that we review for correctness." *Brown v. Glover,* 2000 UT 89, ¶ 15, 16 P.3d 540.

■ ¶ 8 Second, River Crossings argues that "the district court abuse[d] its limited discretion in refusing to set aside the default judgment." "[A] trial court has broad discretion in deciding whether to set aside a default judgment." *Lund v. Brown,* 2000 UT 75, ¶ 9, 11 P.3d 277. However, "the court's discretion is not unlimited." *Id.*

¶ 9 Third, River Crossings argues that the trial court's "refus[al] to set aside the default judgment [was] based on faulty findings of fact." This court will reverse a trial court's factual findings only if the marshaled evidence demonstrates that they are clearly erroneous. *See Bingham Consolidation Co. v. Groesbeck,* 2004 UT App 434, ¶ 14, 105 P.3d 365.

## ANALYSIS

### I. Rule 5(a)

■ ¶ 10 Because of River Crossings' statements before the trial court and Arbogast's arguments on appeal, we begin by addressing whether River Crossings' rule 5 arguments were preserved.[3] " '[A]s a general rule, claims not raised before the trial court may not be raised on appeal.' " *Tschaggeny v. Milbank Ins. Co.,* 2007 UT 37,

---

**2.** By this time, River Crossings had hired a Utah law firm to represent it before the trial court.

**3.** Our inquiry is made more difficult by River Crossings' failure to provide a "citation to the

record showing that the issue was preserved" as required by rule 24 of the Utah Rules of Appellate Procedure, *see* Utah R.App. P. 24(a)(5)(A).

¶ 20, 163 P.3d 615 (alteration in original) (quoting *State v. Cram*, 2002 UT 37, ¶ 9, 46 P.3d 230).

> Two policy considerations underlie th[is] preservation rule. First, the rule exists to give the trial court an opportunity to address the claimed error, and if appropriate, correct it. Second, requiring preservation of an issue prevents a party from avoiding the issue at trial for strategic reasons only to raise the issue on appeal if the strategy fails.

*Id.* (citations and internal quotation marks omitted).

¶ 11 In this case, River Crossings' trial counsel did very little to raise the rule 5 issue before the trial court[4] and actually made statements during oral arguments that conflict with its position on appeal. Nevertheless, the trial court specifically considered this issue and expressly found

> [t]hat pursuant to [the Utah Rules of Civil Procedure] Rule 5(a)(2), [River Crossings'] counsel has not formally appeared in the instant action. Nevertheless, [River Crossings'] counsel's notification and communications with [Arbogast]'s counsel constitute an appearance and there was adequate notice [ ] given to [River Crossings], pursuant to the June 29, 2006 letter, that an answer was required to be filed in response to [Arbogast]'s complaint.

The trial court's findings do not simply mirror River Crossings' concessions but instead demonstrate a deeper analysis, which expressly addresses the application of rule 5. River Crossings does not challenge the trial court's finding that an appearance was entered, but rather the court's legal interpretation of rule 5 as stated in its ruling. Neither of the two policy considerations for the preservation requirement prevent our review where the trial court has actually ruled on the issue, and River Crossings' arguments do not suggest a strategic decision to postpone review. We therefore hold that, under the facts of this case, this issue is sufficiently preserved for appellate review.[5] *Cf. Pratt v. Nelson*, 2007 UT 41, ¶ 24, 164 P.3d 366 (determining issue was preserved where trial court received some notice of the issue and "made a specific ruling on the issue" even though petitioner did not address it in a timely manner).

¶ 12 Having determined that this issue is properly before us, we turn now to its merits. Rule 5(a) declares that "every judgment, every order ..., every pleading ..., every paper ..., every written motion ..., and every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties." Utah R. Civ. P. 5(a)(1). The rule "expresses the general principle that notice of all proceedings[, including default proceedings,] must be provided to all parties." *Lund*, 2000 UT 75, ¶¶ 20–27, 11 P.3d 277. However, "[n]o service need be made on parties in default ... for failure to appear." Utah R. Civ. P. 5(a)(2).

¶ 13 River Crossings argues that the trial court correctly determined that it had entered an appearance, but erred when it ruled that "adequate notice was given to [River Crossings] pursuant to the June 29, 2006 letter." Because we agree with Arbogast's argument that the trial court erred when it determined that River Crossings had entered an appearance, we need not address

---

4. River Crossings argues that it "tirelessly raised the issue of lack of notice of the default proceedings at every stage in this litigation." While River Crossings did address the lack of notice before the trial court, its arguments focused on whether notice was required because of Arbogast's assurance that it would not seek default without first notifying BLS. That issue is distinct from the issue on appeal, i.e., whether River Crossings was entitled to notice under rule 5 of the Utah Rules of Civil Procedure.

5. We caution that a concession by trial counsel generally will prevent appellate review. *See First*

*Equity Corp. of Florida v. Utah State Univ.*, 544 P.2d 887, 892 n. 5 (Utah 1975) ("Ordinarily, an appellant cannot raise a theory on appeal for the first time different from that presented to the Court below."); *see also Pratt v. Nelson*, 2007 UT 41, ¶ 17, 164 P.3d 366 ("[A] party cannot take advantage of an error committed at trial when that party led the trial court into committing the error."). However, this case is unique because the trial court independently researched, analyzed, and determined the issue at hand, and that determination is part of the decision on appeal.

River Crossings' contention regarding the sufficiency of notice.

¶ 14 Two cases from the Utah Supreme Court have interpreted rule 5 and addressed what constitutes an appearance. In *Central Bank & Trust Co. v. Jensen*, 656 P.2d 1009 (Utah 1982), defense counsel contacted the plaintiff's counsel after the complaint was filed, advised counsel that he was representing the defendants, and discussed the complaint. *See id.* at 1010. The next day, defense counsel wrote a letter "requesting copies of the pleadings and all other documents." *Id.* The plaintiff's counsel "answered the letter, refusing to supply documentation to aid ... in making a special appearance, but expressing a willingness to cooperate if [the defendants] appeared generally." *Id.* A few weeks later, the plaintiff obtained a default judgment without notifying the defendants or serving them under rule 5. *See id.; see also* Utah R. Civ. P. 5. On appeal, the defendants argued that the default should be set aside because the plaintiff "had an obligation under Rule [ ] 5 ... to notify" the defendants. *Central Bank & Trust*, 656 P.2d at 1011. The supreme court disagreed, "conclud[ing] that plaintiff was under no duty to notify defendants of the default," *id.*, and subsequently explained that the *Central Bank & Trust* defendants "never made an appearance prior to having default judgment entered against [them]," *Lund v. Brown*, 2000 UT 75, ¶ 27, 11 P.3d 277 (discussing *Central Bank & Trust*); *see also Central Bank & Trust*, 656 P.2d at 1011–12 & n. 2 (emphasizing that "[n]o service need be made on parties in default for failure to appear" (emphasis omitted)).

¶ 15 In *Lund v. Brown*, 2000 UT 75, 11 P.3d 277, the plaintiffs filed a complaint, and the defendants filed an answer and counterclaim. *See id.* ¶ 3. However, the plaintiffs never filed a reply to the counterclaim, and

the defendants obtained default judgment without serving the plaintiffs with copies of the default papers pursuant to rule 5. *See id.* ¶¶ 4–5. The plaintiffs appealed the default judgment, arguing that they were entitled to service under rule 5. *See id.* ¶¶ 1, 6. The supreme court agreed and reversed the default judgment.[6] *See id.* ¶ 1. Notably, the supreme court distinguished *Lund* from *Central Bank & Trust* on the basis that *Lund* involved a "formal appearance" while *Central Bank & Trust* did not. *See id.* ¶ 27.

¶ 16 Based on these two supreme court rulings, Arbogast argues that unless a party enters a formal appearance through a pleading in the trial court, it has not appeared and is not entitled to service under rule 5 of the Utah Rules of Civil Procedure. Because we believe *Central Bank & Trust* and *Lund* dictate this result, we agree.

¶ 17 To fully understand the import of *Central Bank & Trust* and *Lund*, it is helpful to examine the manner in which other jurisdictions, and especially the federal courts, have interpreted similar rules. *See id.* (relying on outside sources). These jurisdictions have adhered to one of two conflicting positions when determining what constitutes an appearance.

¶ 18 The first, and the majority position, "is that 'the notice requirement ...' applies not only to parties who have formally appeared, but also to 'those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit.'" *New York v. Green*, 420 F.3d 99, 105 (2d Cir.2005) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam)); *see also id.* (collecting cases); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 142 (5th Cir.1996) ("What constitutes an appearance is not confined to physical appearances in

---

**6.** The plaintiffs in *Lund* actually presented two arguments on appeal: (1) "[T]hat they were reasonably justified, for rule 60(b) purposes, in not replying to the [defendant]s' counterclaim" and (2) "that the [defendant]s' failure to notify them of the default motion justifies their failure to respond." *Lund v. Brown*, 2000 UT 75, ¶ 14, 11 P.3d 277. The supreme court found sufficient

justification to reverse based solely on the first issue. *See id.* ¶ 20. The court then addressed the second argument "to clarify the requirements of the procedural rules." *Id.* The court determined there was "additional justification" for reversal based on the defendants' failure to comply with rule 5. *Id.*

court or the actual filing of a document in the record." (internal quotation marks omitted)). River Crossings argues that Utah has adopted this standard.[7] However, if this were truly the standard in Utah, we believe *Central Bank & Trust* would have been decided differently or disavowed by *Lund*.[8]

¶ 19 In *Central Bank & Trust,* the defendants not only had multiple contacts with the plaintiffs, but also specifically discussed the complaint with plaintiffs' counsel and indicated that they intended to defend by entering a special appearance. *See Central Bank & Trust Co. v. Jensen,* 656 P.2d 1009, 1010 (Utah 1982). *See generally Barlow v. Cappo,* 821 P.2d 465, 466 (Utah Ct.App.1991) ("A special appearance is to contest a court's personal jurisdiction without submitting oneself to it."). Nevertheless, the supreme court later determined that the defendants "never made an appearance." *Lund,* 2000 UT 75, ¶ 27, 11 P.3d 277 (discussing *Central Bank & Trust* ). Thus, *Central Bank & Trust* departs from with the majority rule, which merely requires an indication of "a clear purpose to defend the suit." *See Green,* 420 F.3d at 105 (internal quotation marks omitted).

¶ 20 On the other hand, the position applied by a minority of jurisdictions is consistent with the Utah Supreme Court's rulings in *Central Bank & Trust* and *Lund.* Under this standard, courts "strictly construe [ ] the term 'appearance' to require a party to make 'some presentation or submission *to the district court* in the pending action.' " *Id.* (quoting *Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.,* 925 F.2d 226, 230 (7th Cir.1991)); *accord Plaza del Lago Townhomes Ass'n v. Highwood Builders, LLC,* 148 P.3d 367, 370–71 (Colo.Ct.App. 2006); *see also Black's Law Dictionary* 107 (8th ed.2004) (defining "appearance" as "*[a] coming into court* as a party or interested person" (emphasis added)); 10 James Wm. Moore et al., *Moore's Federal Practice* § 55.33[4][b] (3d ed. 2008) ("The Seventh Circuit has the better linguistic and practical argument.").[9] Under this standard, the supreme court's rulings in *Central Bank & Trust* and *Lund* are easily understood. In *Central Bank & Trust,* the defendant never made any presentation to the district court, *see* 656 P.2d at 1009–10, and thus "never made an appearance," *Lund v. Brown,* 2000 UT 75, ¶ 27, 11 P.3d 277 (discussing *Central Bank & Trust* ). In *Lund,* the plaintiffs made a presentation to the district court by filing a complaint and, therefore, were deemed to have appeared. *See id.*

■ ¶ 21 Despite the holdings of *Central Bank & Trust* and *Lund,* River Crossings

---

7. Even if Utah had adopted this standard, it is questionable whether River Crossings' actions actually indicated "a clear purpose to defend the suit." *See New York v. Green,* 420 F.3d 99, 105 (2d Cir.2005) (internal quotation marks omitted). Although River Crossings participated in multiple settlement discussions, it did so through its Nevada counsel; it does not appear that River Crossings obtained Utah counsel—a necessary step for defending a lawsuit in Utah—until *after* the default judgment had been entered. *See generally* Utah Supreme Court Rules of Prof'l Practice R. 14–802 ("[O]nly persons who are active, licensed members of the Bar in good standing may engage in the practice of law in Utah.").

8. The supreme court did acknowledge in *Lund* that "[a] much more compelling case can be made for requiring notice to a party who is in default but has nonetheless elected to participate *at some level.*" 2000 UT 75, ¶ 24, 11 P.3d 277 (emphasis added). However, the court was not discussing what constitutes an appearance. *See id.* ¶¶ 23–26. Rather, the court was addressing whether or not service was required when a party appeared and *then* defaulted. *See id.* ¶¶ 4, 23–26 (addressing situation where, after filing

the complaint, the plaintiffs did not answer the defendants' counterclaim because they believed the action was stayed when the plaintiff filed for bankruptcy). Moreover, far from disavowing *Central Bank & Trust,* the court reaffirmed that case by reiterating that "[i]n *Central Bank & Trust,* the defaulting party never made an appearance." *Id.* ¶ 27.

9. Because the court clerk is authorized to enter default judgment under rule 55 only if the party is in default for failure to appear and the other requirements are met, *see* Utah R. Civ. P. 55(b), one of the benefits of the minority position is that it creates a bright-line test that the clerk can use when determining whether or not default is appropriate. In contrast, "[t]he clerk is in no position to know whether there have been discussions or documents exchanged among the parties and thus, under the majority definition of the term, cannot determine with certainty whether any party has or has not 'appeared' in the action." 10 James Wm. Moore et al., *Moore's Federal Practice* § 55.33[4][b] (3d ed.2008).

argues that Utah could not have adopted the minority position because it would be incompatible with Utah's Standards of Professionalism and Civility. We do not believe the two are incompatible. The Standards of Professionalism and Civility require notice *before* obtaining default. *See* Utah Standards of Professionalism & Civility 16 ("Lawyers shall not cause the entry of a default without first notifying other counsel whose identity is known...."). Rule 5, on the other hand, concerns service *at the time of* filing. *See* Utah R. Civ. P. 5. Thus, a party can easily comply with the standards of civility, even though service is not required under rule 5. For example, in this case, counsel would have acted in conformity with the standards of civility, even though he did not serve the actual papers under rule 5, if he had first called defense counsel and alerted him that default was imminent.[10]

¶ 22 Although the supreme court has never explicitly addressed the two competing lines of authority or defined what constitutes an appearance under rule 5, we believe the holdings of *Central Bank & Trust* and *Lund* place us among the jurisdictions that require a presentation or submission to the district court. Because River Crossings' legal counsel, like the defendants' legal counsel in *Central Bank & Trust,* never "ma[d]e some presentation or submission *to the district court,"* *Green,* 420 F.3d at 105, we hold that River Crossings never made an appearance pursuant to rule 5. For these reasons, we affirm the trial court's ruling on this issue.

## II. Rule 60(b)

■ ¶ 23 River Crossings argues "the district court abused its discretion in refusing

to set a[si]de the default judgment [because River Crossings] presented a 'reasonable excuse' for failing to file a responsive pleading." (Capitalization omitted.) Under rule 60(b), a "court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b). Although a trial court has broad discretion when determining whether to set aside default judgment under rule 60(b), "the court's discretion is not unlimited." *Lund,* 2000 UT 75, ¶ 9, 11 P.3d 277. Indeed, "the [disfavored] nature of a default judgment and the equitable nature of rule 60 provide ... limits." *Id.* ¶ 10. Thus, "it is quite uniformly regarded as an abuse of discretion to refuse to vacate a default judgment where there is reasonable justification or excuse for the defendant's failure to appear, and timely application is made to set it aside." *Id.* ¶ 11 (internal quotation marks omitted). In this case, however, we cannot say the trial court exceeded its discretion.

■ ¶ 24 River Crossings presents several arguments that it claims demonstrate a "good faith, legitimate belief that no action would or could be taken against them." *See id.* ¶ 19 (determining such a belief "constitutes a 'reasonable justification or excuse' ").[11]

¶ 25 First, River Crossings argues that "[b]ased on [Arbogast's counsel]'s express representation [ ] that he would not initiate default proceedings against River Crossings without first notifying opposing counsel, Riv-

---

**10.** During oral arguments on appeal, counsel for Arbogast stated that he believed his June 29, 2006 letter constituted sufficient notice under the Standards of Professionalism and Civility. We have no reason to question the sincerity of that belief. We think, however, the applicable standard requires more than a prospective notice that a complaint will be due in twenty days. Otherwise, a summons, which by rule informs a defendant when an answer is due, *see* Utah R. Civ. P. 4(c)(1), would also be sufficient notice, and the applicable standard would have added little. We therefore interpret this particular standard as requiring notice *after* the allotted passage of time for filing an answer but *before* a party actually seeks to obtain the entry of default.

**11.** River Crossings' primary argument to the trial court was that counsel had mistakenly believed the Utah Rules of Civil Procedure were similar to the Nevada Rules of Civil Procedure, which require three days notice before entering default judgment when a party has appeared. *Compare* Utah R. Civ. P. 55, *with* Nev. R. Civ. P. 55(b)(2). *See also McNair v. Rivera,* 110 Nev. 463, 874 P.2d 1240, 1245 (1994) ("An appearance for purposes of NRCP 55(b)(2) does not require a presentation or submission to the court; indeed, a course of negotiation between attorneys is sufficient to constitute an appearance ...." (internal quotation marks omitted)). River Crossings does not raise this argument on appeal.

er Crossings reasonably and justifiably believed that no action would be taken against it." Arbogast argues that it made this representation, if at all, only so that River Crossings would have adequate time to present a settlement offer or obtain local counsel.[12] Arbogast further argues that once counsel sent the June 29, 2006 letter rejecting River Crossings' settlement offer and requesting an answer, it was no longer reasonable for River Crossings to believe that it need not answer the complaint. The trial court agreed with Arbogast and found "[t]hat the contention that [River Crossings'] counsel expected notice prior to the default entry is unfounded given the express provisions of the June 29, 2006 letter" requesting that an answer be filed.

¶ 26 Second, River Crossings argues that it has a reasonable excuse for not filing an answer because the attorney at BLS "who had been responsible for negotiating and communicati[ng] with [Arbogast] was discharged, and the attorney who assumed those responsibilities went on an extended vacation." However, as the trial court found, the discharged BLS attorney was removed from the case *before* the June 29, 2006 letter. Indeed, the June 29 letter was sent to the two lawyers who had assumed the responsibilities of the discharged attorney. Moreover, even if one of the replacement attorneys was on extended vacation, the other attorney was not. In fact, River Crossings declared to the trial court that it "d[id]n't want to make a big fact about" the other lawyer's vacation "because [her colleague] was aware of what was going on."[13] Despite this awareness, no answer was filed. Thus, the trial court found that this "excuse [ ] ... d[id] not constitute excusable neglect, inadvertent surprise or mistake."

¶ 27 Third, River Crossings argues that its "attorneys believed that settlement negotiations were ongoing." River Crossings bases this argument primarily on an e-mail that its managing member sent directly to Arbo-

gast's principal—but not to Arbogast's counsel. In that e-mail, River Crossings' managing member simply stated, "Give me a call when you get a chance. We should probably discuss the direction of your lawsuit." Even assuming that the e-mail implied continued settlement discussions, it was not reasonable to assume that it freed River Crossings from filing an answer. This is especially true because the e-mail was not sent by River Crossings' legal counsel, Arbogast never responded to the e-mail, and Arbogast had explicitly rejected River Crossings' settlement efforts and requested an answer in its June 29 letter. Accordingly, the trial court found that River Crossings failed to exercise due diligence and that it was this failure that ultimately resulted in the default judgment.

¶ 28 After reviewing River Crossings' arguments, the facts of the case, and the trial court's rulings, we cannot say the trial court exceeded the bounds of its discretion. River Crossings conceded to the trial court that "this is a close case." Because "a trial court has [such] broad discretion" on this issue, *Lund v. Brown*, 2000 UT 75, ¶ 9, 11 P.3d 277, we will not reverse an admittedly, and demonstrably, "close case." We recognize that default judgments are generally disfavored, but "[i]n the absence of an abuse of discretion, we [will] not undertake to substitute our idea of what is proper for that of the trial court." *G.M. Leasing Corp. v. Murray First Thrift & Loan Co.*, 534 P.2d 1244, 1245 (Utah 1975) (refusing to substitute judgment on trial court's issuance of sanctions). Although we might have reached a different conclusion in the first instance, we affirm the trial court's ruling that River Crossings did not show reasonable justification or excuse for its failure to answer.

### III. The Trial Court's Findings of Fact

¶ 29 River Crossings' final contention is that the "district court's refusal to set aside

---

12. Arbogast primarily contends that no such statement promising notification before default was made.

13. Even if counsel was not aware of the proceedings in this case, we are not convinced that relief under rule 60(b) would be required. *See generally Kennard v. Kennard*, 2008 UT App 134, ¶¶ 16, 21–24, 183 P.3d 1052 (holding problems with counsel's mail were not sufficient grounds for rule 60 relief where counsel did not act with due diligence).

the default judgment was based on faulty findings of fact."

¶ 30 River Crossings argues the trial court incorrectly found that, other than the June 29, 2006 letter, "[t]here were not any ... discussions between [Arbogast]'s counsel and [River Crossings'] counsel between ... June 29, 2006 and August 18, 2006." However, River Crossings acknowledges that "the district court's finding is perhaps technically correct." In fact, the record before us indicates the trial court's ruling was correct. There is nothing in the record demonstrating any communication from River Crossings' legal counsel to Arbogast's legal counsel during this time period. The only communication is the July 25 e-mail that was sent from River Crossings' managing member to Arbogast's principal. Thus, this finding of fact is not clearly erroneous.[14]

¶ 31 River Crossings further contests the trial court's finding that the June 29, 2006 letter informed River Crossings that Arbogast was *requiring* an answer within twenty days. River Crossings argues that because the letter actually stated that Arbogast "[is] hereby *requesting* ... an Answer to the complaint within twenty (20) days," the trial court's ruling is clearly erroneous and the ruling must be reversed. We disagree. Regardless of the professional and civil tone of the June 29 letter, its message was clear: Arbogast had rejected River Crossings' settlement offer and was moving forward with the litigation. Indeed, River Crossings acknowledged this plain implication during oral arguments.[15] Accordingly, the trial court's finding is not clearly erroneous.

### IV. Attorney Fees

¶ 32 River Crossings does not appeal the trial court's grant of attorney fees to Arbogast, but argues that Arbogast is not entitled to attorney fees on appeal. Again, we disagree.

¶ 33 The trust deed note provided that "[i]f this note is collected by an attorney after default in the payment of principal or interest, either with or without suit, the undersigned ... agree to pay all costs and expenses of collection including a reasonable attorney's fee." Moreover, the trial court's judgment awarded Arbogast its attorney fees below. *See generally Valcarce v. Fitzgerald,* 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (internal quotation marks omitted)).

¶ 34 River Crossings' only argument against an award of attorney fees on appeal is that "this appeal does not directly relate to Arbogast's collection efforts." However, this case directly concerns Arbogast's collection efforts; Arbogast filed suit to collect the amount it claims it was owed under the parties' agreement. Because this case concerns Arbogast's collection efforts and because Arbogast was awarded its attorney fees below, we remand to the trial court for a determination of the reasonable attorney fees Arbogast incurred on appeal.

### CONCLUSION

¶ 35 We affirm the trial court's denial of River Crossings' rule 60(b) motion to set aside the default judgment and remand for a determination of the attorney fees Arbogast incurred on appeal.

¶ 36 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and GREGORY K. ORME, Judge.

---

14. Nor do we agree with River Crossings' argument that the trial court's finding is misleading. Not only is the trial court's finding correct, but it helps refute River Crossings' supposed belief that settlement discussions were ongoing. All of the previous settlement discussions had occurred through the parties' respective counsel. The fact that all communication between counsel stopped after the June 29, 2006 letter suggests that settlement efforts had ceased.

15. The following colloquy occurred during oral arguments in the trial court:

[Counsel:] Our argument is that the June 29th, 2006 letter, while it said file an answer, I request that you file an answer, there wasn't the s[word] of Damocles, if you don't, boom, you are done....

[The Court]: Counsel, doesn't that somewhat imply that? ...

[Counsel]: Well, the implication is there.