**2018 UT App 210**

## THE UTAH COURT OF APPEALS

DAVID SILVA,
Appellee,
*v.*
BONNIE SILVA,
Appellant.

Opinion
No. 20160171-CA
Filed November 8, 2018

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 140908706

J. Spencer Ball, Attorney for Appellant

Shawn D. Turner, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion, in which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Bonnie Silva appeals the district court's denial of her motions to set aside a default judgment and a sheriff's sale following that judgment. She also challenges the district court's award of attorney fees. We vacate the district court's rulings and remand for further proceedings.

BACKGROUND

¶2 Bonnie Silva and David Silva divorced in 2010. The marital estate included interests in fifteen parcels of real property—four properties held jointly, one property held by

David, and ten properties held by Bonnie.[1] The decree allocated the properties and ordered the parties to execute quitclaim deeds within thirty days, conveying their interests in the properties to one another as specified in the decree. If either party failed to execute a quitclaim deed, the divorce decree authorized the other party to seek a court order to transfer title. One of the properties awarded to David was a residential property located on Dennis Drive in West Valley City, Utah (the Dennis Drive Property).

¶3     In June 2010, pursuant to the divorce decree, Bonnie executed a quitclaim deed as "Grantor Bonnie Moore, now known as Bonnie Silva," purportedly conveying the Dennis Drive Property to David. But when David attempted to record the deed, he discovered that "Bonnie Moore[,] as Trustee for the Consolidated Trust," actually held title to the Dennis Drive Property. He further discovered that one week before he had filed for divorce in September 2008, Bonnie had conveyed the Dennis Drive Property and other properties then in her name to herself and her daughters, K.V. Lum and R. Carter, as trustees of a trust known as the Consolidated Trust. After learning these facts, David sent a revised quitclaim deed to Bonnie, but she did not sign and return it as requested. Several months later, Bonnie, as a trustee of the Consolidated Trust, again conveyed the Dennis Drive Property and other properties to Lum, as trustee of the Consolidated Trust.

¶4     In October 2010, David filed a Motion for Contempt with the district court. Because he claimed he could not locate Bonnie, David filed a Motion for Alternative Service, which the court granted. The district court held an evidentiary hearing and entered a default judgment finding Bonnie in contempt for failing to convey the Dennis Drive Property to David. However,

---

1. Because Bonnie and David share a last name, we refer to them by their first names throughout this opinion. We intend no disrespect by this apparent informality.

the court left open a window during which Bonnie could cure the contempt. If Bonnie did not convey the Dennis Drive Property to David within thirty days, the court would enter a $219,000 judgment against her. Bonnie did not convey the property to David during this time. A few months later, Lum, as a trustee of the Consolidated Trust, conveyed title to the Dennis Drive Property to Carter, as a trustee of the Consolidated Trust. The district court then entered a contempt judgment against Bonnie, reducing slightly the $219,000 by amounts David owed to Bonnie under the divorce decree.

¶5    The following month, David instituted this action against Bonnie and her daughters alleging fraudulent conveyance and seeking to quiet title to the Dennis Drive Property. David filed a motion for alternative service recounting his prior unsuccessful efforts to serve Bonnie. David asserted that the process server had attempted personal service at Bonnie's last known address four separate times. The district court ordered alternative service by publication, which David accomplished.

¶6    Bonnie did not answer the complaint. The district court clerk consequently entered a default certificate against Bonnie, and the court ordered an evidentiary hearing on damages. Concerned that Bonnie may have received inadequate notice of the hearing, the district court rescheduled the hearing and required additional service on Bonnie. David attempted service by mailing copies of the notice of hearing to what David claimed was Bonnie's last known address by both regular and certified mail. David also attempted personal service whereby the process server left the notice at Bonnie's last known residence on three separate occasions. David then completed service by publication again.

¶7    Bonnie did not appear at the hearing on damages. In its Findings of Fact and Conclusions of Law, the district court concluded that "Service of Process of the Complaint and notice of the evidentiary hearing on damages were in accordance with the Rules of the Court, the Statutes of Utah, and the

Constitutional requirements of due process." The district court also determined that Bonnie had fraudulently conveyed the Dennis Drive Property and her other properties to the Consolidated Trust. Accordingly, the district court ruled that the contempt judgment entered in the divorce action attached to the properties, that Bonnie and her daughters were enjoined from transferring or encumbering the properties, and that David "may levy execution on the properties . . . and sell the amount of the property necessary to satisfy the judgment." Finally, the district court awarded attorney fees and costs to David. The district court thus entered default judgment against Bonnie in the amount of the contempt judgment, now attached to Bonnie's properties. The court also awarded costs and attorney fees totaling nearly $50,000. The district court clerk subsequently issued a writ of execution on three of Bonnie's properties, including the Dennis Drive Property.

¶8 Later that month, Bonnie's counsel entered an appearance in the district court and filed a motion pursuant to rule 60(b)(1) of the Utah Rules of Civil Procedure seeking to set aside the default judgment on the basis of excusable neglect and to quash the writ of execution. The district court held a hearing, which Bonnie and her counsel attended. At that hearing, Bonnie maintained that the default judgment should be set aside on the ground of excusable neglect because she did not receive actual notice of the action and service was insufficient under the circumstances. Bonnie acknowledged that service complied with the law, but she argued that David knew where Bonnie was located and could easily have contacted her to give her actual notice of his claims.

¶9 Bonnie filed an affidavit with her rule 60(b) motion and a second affidavit with her reply motion. In her first affidavit, Bonnie alleged that she had not received notice of the current action against her. She further alleged that she received a call from David notifying her that "something was wrong with the quitclaim deed" but that "David never indicated to [her] in that telephone call that there was any court proceeding." In her

second affidavit, Bonnie alleged that David knew of various means of contacting her, including her two email addresses or through their respective children and the renters of their properties. David did not refute these allegations.

¶10    The district court denied Bonnie's motion to set aside based upon excusable neglect on the ground that "service [of the notice] and the resulting default were appropriate." The court reached this conclusion, in part, because the court determined Bonnie provided no evidence—despite her two affidavits— supporting her assertions that David knew where Bonnie was located and that she did not receive actual notice of the proceedings. And although the court recited the law relative to excusable neglect, the court did not address excusable neglect in its analysis. Similarly, the court denied the motion to quash for Bonnie's failure to provide evidence of irreparable harm.

¶11    Four days later, the Dennis Drive Property and the other two properties subject to the writ of execution were sold at a sheriff's sale. Bonnie responded with a motion for a temporary restraining order (TRO), a motion to void the execution sale, and a motion to join the sale purchasers as parties to the action. After a hearing, the district court denied the TRO on the ground that Bonnie had failed to meet the required elements for relief. The court denied the motion to join the purchasers on the ground that "[Bonnie] cites rules that apply before a judgment is made and are not applicable for a case as this one where judgment was entered." The court noted that "even if there was no judgment in this case, there is no basis, claim, or cause of action asserted against the purchasers." The court denied the motion to void the execution sale on the ground that the court had already ruled at the TRO hearing that the notice of sale was properly served.

¶12    Bonnie appealed the district court's denial of her motions to set aside the default judgment and the sheriff's sale, and the district court's award of attorney fees to David. We issued an opinion in this matter on July 28, 2017. *See Silva v. Silva*, 2017 UT App 125, 402 P.3d 36, *vacated*, Jan. 9, 2018. We subsequently

granted a petition for rehearing, vacated that opinion, and reheard the matter.

ISSUES AND STANDARDS OF REVIEW

¶13 Bonnie asserts two claims of error on appeal.[2] First, she contends that the district court abused its discretion in denying her motion to set aside the default judgment. We generally review a district court's denial of a rule 60(b) motion under an abuse of discretion standard. *Utah Res. Int'l, Inc. v. Mark Techs. Corp.*, 2014 UT 60, ¶ 11, 342 P.3d 779.

¶14 Second, Bonnie contends that the district court abused its discretion in denying her motion to set aside the sheriff's sale, claiming she lacked notice and pointing to irregularities in the sale. "A district court's decision to set aside a sheriff's sale is to be reviewed for an abuse of discretion." *Meguerditchian v. Smith*, 2012 UT App 176, ¶ 9, 284 P.3d 658 (quotation simplified).

ANALYSIS

I. Rule 60(b) Motion

¶15 Bonnie first contends that the district court abused its discretion in denying her rule 60(b) motion to set aside the default judgment. "Rule 60(b) of the Utah Rules of Civil Procedure provides a mechanism for a party to obtain relief from a final order or judgment . . . ." *Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 13, 376 P.3d 322. "[A] movant is entitled to

---

2. Bonnie also asserts that the attorney fees award associated with the default judgment was not supported by findings regarding the reasonableness of the award. Because we vacate the district court's decision based on Bonnie's first argument, we do not address her attorney fees argument in detail.

have a default judgment set aside under [rule] 60(b) if (1) the motion is timely; (2) there is a basis for granting relief under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense."[3] *Menzies v. Galetka*, 2006 UT 81, ¶ 64, 150 P.3d 480.

¶16 With respect to the second requirement, Bonnie asserted excusable neglect as a basis for relief. *See* Utah R. Civ. P. 60(b)(1). The excusable neglect inquiry is a flexible one in which the district court is granted broad discretion "to consider all relevant factors and give each factor the weight that it determines it deserves." *Jones v. Layton/Okland*, 2009 UT 39, ¶¶ 17, 25, 214 P.3d 859. In such equitable inquiries, "the question is always whether the particular relief sought is justified under principles of fundamental fairness in light of the particular facts." *Id.* ¶ 17. Courts are generally encouraged to be "indulgent toward setting a judgment aside where there is reasonable justification or excuse for the defendant's failure to answer and when timely application is made." *Miller v. Martineau & Co.*, 1999 UT App 216, ¶ 25, 983 P.2d 1107 (quotation simplified). Indeed, upon a timely motion to set aside, "it is quite uniformly regarded as an abuse of discretion to refuse to vacate a default judgment where there is reasonable justification or excuse for the defendant's failure to appear." *Arbogast Family Trust v. River Crossings, LLC*, 2008 UT App 277, ¶ 23, 191 P.3d 39 (quotation simplified), *aff'd*, 2010 UT 40, 238 P.3d 1035.

¶17 Here, the district court did not address whether Bonnie's failure to respond to the complaint was due to excusable neglect. Instead, the court's analysis focused only on the propriety of its order authorizing alternative service. In its decision denying Bonnie's motion to set aside, the court observed that the court had approved the alternative service and that Bonnie's counsel

---

3. Because we conclude that the district court failed to properly analyze Bonnie's excusable neglect argument—the basis she alleged for relief—we do not consider the other requirements.

had "admitted at the hearing that service upon [her] was legally proper." On this basis, the district court concluded that "service and the resulting default were appropriate." But the question before the court was not whether service or entry of default judgment was technically appropriate. Indeed, despite proper service and entry of an otherwise appropriate default judgment, parties under our rules are afforded an opportunity to set a judgment or final order aside. The correct inquiry, then, is whether Bonnie's lack of actual notice constitutes a reasonable justification to set aside the default "under principles of fundamental fairness in light of the particular facts." *Jones*, 2009 UT 39, ¶ 17. While the particular circumstances of service of process may shed light on whether Bonnie's failure to respond was reasonable and excusable, the district court failed to address this issue.

¶18 Bonnie argues that David had "many means at his disposal to contact [her] to give notice that he was suing her, including calling and emailing her." Her affidavit alleges that he knew "her two active email addresses, her telephone number, . . . her children, and many other means he had after 13 years of marriage" to contact her. If Bonnie's unrefuted allegations are to be believed, then David, contrary to his representations to the court when he filed his motion for alternative service, had the ability to contact Bonnie through means that would have been more likely to reach her. If this is the case, then there was likely "reasonable justification" for Bonnie's failure to answer. *See Arbogast Family Trust*, 2008 UT App 277, ¶ 23.

¶19 The district court did not address whether these circumstances made Bonnie's failure to respond excusable. Rather, the court merely ended its inquiry upon determining that (1) the alternative service was adequate and (2) Bonnie admitted the technical legality of that service of process. Because this determination did not address Bonnie's excusable neglect argument, we vacate the district court's ruling and remand for further proceedings.

*Silva v. Silva*

## II. Sheriff's Sale

¶20    Bonnie also challenges the district court's refusal to set aside the sheriff's sale of three of her properties to satisfy the judgment. A court "may set aside a sheriff's sale where (1) a debtor's property is sold at a grossly inadequate price and (2) there were irregularities during the sale that contributed to the inadequacy of price or circumstances of unfairness during the redemption period caused by the conduct of the party benefitted by the sale." *Pyper v. Bond*, 2011 UT 45, ¶ 15, 258 P.3d 575.

¶21    Bonnie points to two irregularities in the sale that she believes justify setting it aside. First, she asserts that she and her attorney did not receive proper notice of the sale as outlined by rules 69B(b), 64(a)(10), and 5 of the Utah Rules of Civil Procedure. Second, she points out that the sheriff's sale disposed of all three properties together rather than as separate parcels. She asserts that this is contrary to rule 69B(d), which directs, "The property shall be sold in such parcels as are likely to bring the highest price. Severable lots of real property shall be sold separately." Utah R. Civ. P. 69B(d). Bonnie maintains that these irregularities contributed to a grossly inadequate sale price, pointing out that the Dennis Drive Property alone was valued at $219,000 at "the bottom of the real estate depression in Utah," yet the Dennis Drive Property plus two other single family dwellings were sold together at auction for only $186,000 in 2016.

¶22    In its ruling on Bonnie's motion to set aside the default judgment, the district court did not fully address her arguments. The ruling states simply that the court had "already addressed at the previous hearings the issue of notice of the sale (not required to be served on counsel and notice of sale not done under Rule 5)." From what we can glean from the record, this ruling seems to be based on the court's reading of rule 69B(b)(3), which states that "[i]f the property is real property, the officer shall post written notice" of the sale. *Id.* R. 69B(b)(3). The district court

appears to have taken this statement in the rule to mean that only posting of notice, rather than service on the defendant pursuant to rule 5, is required under 69B. But in examining the structure of rule 69B(b), this is not the case.

¶23   The rule first states, "The officer shall set the date, time and place for sale *and serve notice thereof on the defendant . . . .*" *Id.* R. 69B(b) (emphasis added). The rule then goes on to state, "The officer shall publish notice of the date, time and place of sale as follows . . . ." *Id.* Rule 69B(b)(3), on which the district court appears to have relied for its determination that "if it's real property . . . [t]he manner [of service] is different," is only a subpart of subsection (b) and describes the manner in which notice is to be published with respect to real property. It does not negate the requirement in the first sentence of subsection (b) regarding service upon the defendant. Rule 64(a)(10) defines "serve" for purposes of rule 69B as "any method of service authorized by Rule 5," *id.* R. 64(a)(10), and rule 5 requires service upon a party's attorney where the party is represented by counsel, *id.* R. 5(b). Thus, the district court's determination that service upon Bonnie's attorney was not required was erroneous.

¶24   Nevertheless, the defect in service does not necessarily mean that the sheriff's sale should be set aside. *See Pyper*, 2011 UT 45, ¶ 15 (stating that a sheriff's sale may be set aside where the price is "grossly inadequate" and there are "irregularities during the sale that contributed to the inadequacy of price or circumstances of unfairness"). Further analysis is needed to make this determination. Because the district court erred in its determination regarding notice and did not fully address Bonnie's other arguments, we remand for the district court to address those arguments.

### III. Attorney Fees on Appeal

¶25   Finally, both parties request an award of attorney fees incurred on appeal. Bonnie contends that "[e]quity requires that [she] be granted her attorney's fees for having to make this

appeal." David counters that even if Bonnie is "able to prevail on appeal, [she] would not be entitled to [her] fees," because she was "not awarded fees below." David also requests attorney fees on appeal because he was awarded fees in the default judgment.

¶26    "When a party is entitled to attorney fees below and prevails on appeal, that party is also entitled to fees reasonably incurred on appeal." *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶ 71, 408 P.3d 296 (quotation simplified). "In Utah, attorney fees are awardable only if authorized by statute or by contract." *Jones v. Riche*, 2009 UT App 196, ¶ 1, 216 P.3d 357 (quotation simplified). "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity." *Stewart v. Utah Public Service Comm'n*, 885 P.2d 759, 782 (Utah 1994). "Courts have exercised that inherent power in several categories of cases," such as "when a party acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quotation simplified).

¶27    The parties present no contract or statute authorizing attorney fees under the circumstances. Further, neither party has made the required showing or otherwise persuaded us that equity requires an award of attorney fees. Accordingly, we decline to exercise our equitable power and deny each party's request for attorney fees incurred on appeal.

CONCLUSION

¶28    We conclude that the district court did not address Bonnie's arguments for setting aside the default judgment and the sheriff's sale. Accordingly, we vacate the district court's rulings on these motions and remand for the district court to fully address Bonnie's arguments. We deny each party's request for attorney fees incurred on appeal.

_____