2000 UT 75

**Kurtis LUND dba Kurt Lund Construction and B & B Drywall, Inc., Plaintiffs and Appellants,**

v.

**Fon Ray BROWN, III, Sally Brown, and John Does and Jane Does 1–10, Defendants and Appellees.**

No. 981778.

Supreme Court of Utah.

Sept. 22, 2000.

Diane H. Banks, Robert A. Garda, Jr., Salt Lake City, for plaintiffs.

Christopher L. Daines, Logan, for defendants.

DURRANT, Justice:

¶1 Plaintiffs below, Kurtis Lund (Lund) and B & B Drywall (B & B) appeal the trial court's denial of their motion to vacate an entry of default judgment. We reverse and remand.

## BACKGROUND

¶2 In September 1996, Fon and Sally Brown (the Browns) hired Lund to construct a house. Lund hired B & B as a subcontractor to install drywall. Lund worked on the house between October 1996 and May 1997.

B & B worked on the house in April and May 1997. When the Browns refused to pay them for their work, Lund and B & B filed mechanic's liens.

¶ 3 In November 1997, Lund and B & B filed an action in district court seeking to foreclose on their liens. Specifically, they both sought reimbursement for their own work and Lund also sought reimbursement for its work and the work performed by the subcontractors, including B & B. The Browns filed an answer and counterclaim on December 15, 1997, alleging that Lund had breached the construction contract. In addition, the Browns alleged that B & B had breached its contract with Lund, thereby causing damages to the Browns as the intended third party beneficiaries. The Browns sought money damages and an order releasing the liens.

¶ 4 On December 29, 1997, before replies to the Browns' counterclaim were due, Lund filed for bankruptcy in the United States Bankruptcy Court for the District of Utah. Lund's claim against the Browns therefore became an asset of his bankruptcy estate. Lund notified both the trial court and the Browns of the bankruptcy proceedings. Because Lund and B & B believed that bankruptcy code section 362(a) automatically stayed any actions involving property of the bankruptcy estate, neither Lund nor B & B filed a reply to the Browns' counterclaim.

¶ 5 Without providing notice, the Browns' counsel, Mr. Garda, sought a default judgment against Lund and B & B for failing to reply to the counterclaim. On May 21, 1998, the trial court entered defaults against Lund and B & B. On May 28, the trial court entered default judgments, declaring Lund's and B & B's liens invalid and requiring B & B to pay specified damages and attorney fees. The Browns' counsel notified Lund and B & B by mail of the default judgments on June 17, 1998.

¶ 6 Shortly thereafter, Lund and B & B filed a motion to set aside the default judgments pursuant to Utah Rule of Civil Procedure 60(b). Lund and B & B argued that the judgments should be vacated under the "mistake, inadvertence, surprise, or excusable neglect" prong of rule 60 because they had believed the bankruptcy case stayed any further actions regarding their complaint or the counterclaim. Lund and B & B asserted several other reasons why the judgments should be set aside, including that the Browns did not provide them required notice of the default actions.

¶ 7 The Browns countered that they complied with all notice requirements, that the bankruptcy stay did not apply to B & B, and that the stay did not prohibit a declaratory judgment, such as one invalidating the mechanic's lien, against Lund. The Browns claimed that neither Lund nor B & B had any justifiable reason for failing to respond to the counterclaim. The Browns argued in the alternative that even if Lund or B & B could satisfy rule 60(b), the default judgments should not be vacated because neither of them had demonstrated the existence of a "meritorious defense" to the counterclaim.

¶ 8 The trial court denied Lund's and B & B's motion to vacate "[f]or reasons stated" by the Browns. Lund and B & B now appeal. On appeal we must decide whether the trial court correctly determined that (1) neither Lund nor B & B had a reasonable excuse for failing to respond to the counterclaim and that (2) Lund and B & B did not have a "meritorious defense" to the counterclaim.

## STANDARD OF REVIEW

¶ 9 As to the first issue, a trial court has broad discretion in deciding whether to set aside a default judgment. *See Katz v. Pierce,* 732 P.2d 92, 93 (Utah 1986) (per curiam). Though broad, the court's discretion is not unlimited. As a threshold matter, a court's ruling must be "based on adequate findings of fact" and "on the law." *May v. Thompson,* 677 P.2d 1109, 1110 (Utah 1984) (per curiam). A decision premised on flawed legal conclusions, for instance, constitutes an abuse of discretion.

¶ 10 Moreover, the nature of a default judgment and the equitable nature of rule 60 provide further limits. *See id.; see also Schwab v. Bullock's Inc.,* 508 F.2d 353, 355 (9th Cir.1974) (explaining limits to trial court's discretion under Federal Rule of Civil Procedure 60 (which is virtually identical to

Utah's rule 60)); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2857, at 257–58 (2d ed.1995) (stating that "[b]ased on the remedial nature of Rule 60(b), the discretion of the district court to deny a motion for relief is limited"). For example, we have stated that a trial court's "discretion should be exercised in furtherance of justice and should incline towards granting relief in a doubtful case to the end that the party may have a hearing." *Helgesen v. Inyangumia*, 636 P.2d 1079, 1081 (Utah 1981) (citing *Warren v. Dixon Ranch Co.*, 123 Utah 416, 420, 260 P.2d 741, 743 (1953)); *see also Katz*, 732 P.2d at 93 (stating that courts should be indulgent toward vacating default judgments where the defaulted party demonstrates a reasonable justification or excuse for failing to answer). Likewise, we have stated that "if default is issued when a party genuinely is mistaken to a point where, absent such mistake, default would not have occurred, the equity side of the court … [should] grant relief." *May*, 677 P.2d at 1110.

¶ 11 Based on these principles, this court has stated that " 'it is quite uniformly regarded as an abuse of discretion to refuse to vacate a default judgment where there is reasonable justification or excuse for the defendant's failure to appear, and timely application is made to set it aside.' " *Helgesen*, 636 P.2d at 1081 (quoting *Mayhew v. Standard Gilsonite Co.*, 14 Utah 2d 52, 54, 376 P.2d 951, 952 (1962)). Thus, while we review the trial court's decision in the instant case for abuse of discretion, we emphasize that the court's discretion is not unlimited.

¶ 12 As to the second issue on appeal, we review for correctness the trial court's determination of whether a defense is meritorious. *See Erickson v. Schenkers Int'l Forwarders, Inc.*, 882 P.2d 1147, 1148 (Utah 1994).

## ANALYSIS

### I. RULE 60(b)

¶ 13 Rule 60(b) provides that a "court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b)(1).

¶ 14 Lund and B & B offer two grounds for their argument that the trial court abused its discretion in failing to set aside the default judgment. First, they argue that they were reasonably justified, for rule 60(b) purposes, in not replying to the Browns' counterclaim because of the bankruptcy stay. Second, they assert that the Browns' failure to notify them of the default motion justifies their failure to respond.

¶ 15 With respect to the first contention, the Browns countered, and the trial court agreed, that the bankruptcy stay did not prohibit actions against a nondebtor like B & B nor did it prohibit a declaratory judgment against the debtor, Lund, and, therefore, neither Lund nor B & B had a justifiable reason for not responding.

¶ 16 We need not decide the exact scope of the bankruptcy stay in order to find that Lund's and B & B's reliance on the stay merits relief from the default judgment. For rule 60(b) purposes, it is enough to state that there is substantial support for Lund's and B & B's interpretation of bankruptcy law. In other words, under rule 60(b), Lund and B & B need not show that their interpretation of bankruptcy law is legally correct, but merely that they possessed a reasonable, good faith belief that the bankruptcy stay was effective against the Browns' counterclaim. In this regard, it is worth noting that the bankruptcy stay provision "is drafted so broadly that it encompasses all types of legal proceedings," including "actions seeking injunctive or similar relief as well as actions seeking money judgments." 1 *Collier Bankruptcy Manual* ¶ 362.03[1] (Lawrence P. King ed., 3d ed.1999). For this reason, any party "seeking to take action against the debtor or its property is well advised to assume that the stay applies and seek relief by appropriate proceedings in the bankruptcy court." *Id.* ¶ 362.03[4][b].

¶ 17 Pertinent to the instant case, the bankruptcy code imposes an automatic stay on any action against the debtor that was or could have been commenced prior to the

bankruptcy, and on any act to obtain, or exercise control over, property of the bankruptcy estate. *See* 11 U.S.C.A. § 362(a)(1), (3) (1993). Lund's mechanic's lien constituted a legal interest in the Browns' home, *see, e.g.*, Utah Code Ann. § 38–1–3 (1997), which became protected property of the bankruptcy estate. *See* 11 U.S.C.A. § 541(a)(1) (1993). Therefore, Lund and B & B were reasonably justified in not responding to the assertion in the counterclaim that the liens should be released because any attempt to do so could potentially violate the stay as an act "to exercise control over property of the [bankruptcy] estate." *Id.* § 362(a)(3).

¶ 18 Further, B & B justifiably believed that a bankruptcy stay prohibits actions against nondebtors in some situations. For instance, the bankruptcy code forbids "prosecution of an action against a non-debtor where the claim is one which could also be asserted by the bankruptcy trustee." *In re U.S. Mktg. Concepts, Inc.*, 113 B.R. 487, 490 (Bankr.N.D.Ind.1990); *see also* 1 *Collier Bankruptcy Manual* ¶ 362.03[3]. In the instant case, the Browns' damages claim against B & B is premised on B & B's alleged breach of contract with Lund. Certainly, Lund possessed the right to pursue such a claim against B & B. Hence, the Browns were arguably barred from doing so under the stay. Therefore, B & B reasonably believed that it did not need to reply to the Browns' counterclaim.

¶ 19 Under the circumstances of this case, Lund's and B & B's good faith, legitimate belief that no action would or could be taken against them due to the bankruptcy stay constitutes a "reasonable justification or excuse" for their failure to reply to the counterclaim.

¶ 20 We therefore conclude that, standing alone, the arguable applicability of the bankruptcy stay provides sufficient justification to excuse Lund's and B & B's failure

to reply under rule 60(b). We nonetheless address the second argument because we deem it important to clarify the requirements of the procedural rules relating to provision of notice of motions for default judgment. We also conclude that the Browns' failure to provide notice of the default judgment proceedings provides additional justification for granting Lund and B & B relief from the judgments.

¶ 21 The Browns' attorney argues that he had no obligation to notify Lund and B & B of the default judgment proceedings and that the lack of notice cannot therefore furnish a basis for setting the defaults aside.[1] Because the Utah Rules of Civil Procedure are not a model of clarity in explaining the notice requirements to parties in default, we take this opportunity to elucidate the rules in question.

¶ 22 Our inquiry begins with Utah Rule of Civil Procedure 5, which expresses the general principle that notice of all proceedings must be provided to all parties. Rule 55 provides an exception to the general notice rule. Subpart (a)(2) of rule 55, subtitled "[n]otice to party in default," states in pertinent part that it is unnecessary to give a party in default "any notice" of any action taken "except as provided in Rule 5(a)." Thus, rule 55(a)(2) establishes that there is a limitation to the scope of rule 55's notice exception that parties in default are not entitled to further notice, and that the limitation is found somewhere in rule 5(a).

¶ 23 Rule 5(a) contains two subparts. Subpart (1) requires that "every written motion other than one which may be heard ex parte . . . shall be served upon each of the parties." Utah R. Civ. P. 5(a)(1). Subpart (1) cannot logically be read as the limitation referenced by rule 55(a)(2). If so read, rule 55(a)(2) and rule 5(a)(1) taken together would provide, in effect, that notice to a party in default is not required where

---

1. In the alternative, the Browns' attorney argues that he did in fact notify Lund and B & B of the default judgment proceedings by sending them a copy of an affidavit of attorney fees in support of default judgment. The Browns' attorney did not make this argument to the trial court in response to the motion to vacate the judgment even though Lund's and B & B's counsel submitted an affidavit to the trial court in support of the motion that categorically denied receiving "any papers in conjunction with the default judgment, or beforehand." Instead, the Browns' attorney simply argued that no notice was required. We decline to address counsel's new argument raised for the first time on appeal.

notice is not required. Under this reading, rule 55(a)(2)'s reference to a rule (5)(a) limitation is wholly superfluous and leaves the question begging as to just what the limitation is. We will not adopt such a reading in light of the well-established principle of statutory construction requiring us to give meaning, where possible, to all provisions of a statute. *See A.C. Fin. Inc. v. Salt Lake County,* 948 P.2d 771, 779 (Utah 1997). As we have previously noted, " '[A]ny interpretation which renders parts or words in a statute inoperative or superfluous is to be avoided.' " *State v. Hunt,* 906 P.2d 311, 312 (Utah 1995) (quoting *United States v. Rawlings,* 821 F.2d 1543, 1545 (11th Cir.1987)).

¶ 24 Subpart (2) of rule 5(a) seems the more logical candidate to provide the limitation referenced in rule 55(a). First, it explicitly references notice requirements with respect to parties in default. Second, while it includes no express, affirmative limitation on the scope of rule 55's default party exception to the general notice requirements, it does provide a limitation by implication. Subpart (2) provides that "[n]o service need be made on parties in default for failure to appear except as provided in Rule 55(a)(2)." Utah R. Civ. P. 5(a)(1) & (2). Thus, subpart (2) impliedly creates two classes of defaulting parties, those in default for failure to appear and those in default for other reasons. The negative pregnant of subpart (2)'s provision that notice need not be given to parties in default *for failure to appear* is that notice should be given to parties in default who *have* made an appearance. There is an obvious policy justification for distinguishing between these two classes of defaulting parties. A much more compelling case can be made for requiring notice to a party who is in default but has nonetheless elected to participate at some level in an action than for requiring notice to a party who has declined to participate in any regard by simply ignoring previous notice given in the form of the complaint.

¶ 25 Two additional considerations confirm the validity of subpart (2)'s implication that notice must be given to a party in default who has appeared. First, interpreted this way, rule 5(a)(2) provides the required limita-

tion on the scope of the default party exception referred to in rule 55(a)(2). As noted above, no other section of rule 5(a) can be legitimately read as providing the limitation. Only this interpretation gives meaning to what would otherwise be a superfluous reference to a limitation in rule 55(a).

¶ 26 Second, this interpretation of rule 5 mirrors the interpretation that has been made of its federal counterpart. Federal Rule of Civil Procedure 5(a)

> requires service of papers and pleadings on each party not in default for failure to appear. Thus, by appearing at any time in the action, a party becomes entitled to have his attorney notified of all subsequent proceedings and receive copies of all papers, even if he later chooses to default.

Wright et al., *supra* ¶ 11, § 1144, at 416 (footnotes omitted); *see also New York Life Ins. Co. v. Brown,* 84 F.3d 137, 142 (5th Cir.1996) (stating that defendant's appearance entitled him to service of all papers, including the summary judgment motion made and granted after defendant had been defaulted). The federal interpretation is persuasive in light of the fact that our rule 5 is "substantially similar" to federal rule 5. *See* Utah R. Civ. P. 5 compiler's notes.

¶ 27 The Browns' attorney argues that this court has previously held that rule 5 does not require notice be given to parties in default. He misreads our precedent. In *Central Bank & Trust v. Jensen,* the case upon which he relies, we held that rule 5(a) excludes "parties in default from those entitled to notice." 656 P.2d 1009, 1011 (Utah 1982). In that case, however, we did not address the circumstance where a party having already made a formal appearance in a case is subjected to a motion for default judgment on a counterclaim. In *Central Bank & Trust,* the defaulting party never made an appearance prior to having default judgment entered against him. Moreover, were we to apply *Central Bank & Trust's* holding to all motions for default, we would render meaningless the provisions in rules 55 and 5 requiring notice of a motion for default in particular categories of cases. Accordingly, we distinguish *Central Bank & Trust's* holding from

the instant case wherein Lund and B & B made an appearance.

## II. MERITORIOUS DEFENSE

■ ¶ 28 We have held that relief from judgment requires a showing of a meritorious defense to a claim. The purpose of the meritorious defense rule is " 'to prevent the necessity of judicial review of questions which, on the face of the pleadings, are frivolous.' " *Erickson*, 882 P.2d at 1149 (quoting *State ex rel. Dep't of Soc. Servs. v. Musselman*, 667 P.2d 1053, 1060 (Utah 1983) (Durham, J., dissenting)). The rule requires the party seeking to set aside a judgment to " 'show' " that he or she " 'has a meritorious defense to the action.' " *Id.* at 1148 (quoting *Musselman*, 667 P.2d at 1055–56 (plurality opinion) (footnote omitted)). Thus, in the instant case, our central inquiries are whether Lund and B & B (1) adequately "showed" the trial court a (2) proposed defense containing allegations, facts, or claims that, if proven at trial, would preclude total or partial recovery by the Browns. *See, e.g., id.* at 1149. We address each issue in turn.

■ ¶ 29 Although we have never explained precisely what a party must do to adequately "show" a meritorious defense, we have made it clear that a party need not actually prove its proposed defenses to meet this standard. *See id.* at 1148 (rejecting a standard essentially requiring that the defaulted party prove its proposed defense before it is eligible to have a judgment vacated). Moreover, we have clearly articulated the fundamental policy underlying the meritorious defense rule. That policy is simply to prevent the necessity of treating defenses that are frivolous on their face. Thus, where a party presents a clear and specific proffer of a defense that, if proven, would preclude total or partial recovery by the claimant or counterclaimant, it has adequately shown a nonfrivolous and meritorious defense for the purposes of its motion to set aside a default judgment. In their memorandum in support of the motion to set aside the default judgments, Lund and B & B argued the following to the trial court:

The Complaint alleges the Browns breached their contract. The Counterclaim alleges the plaintiffs [Lund & B & B] breached their contract. The Complaint seeks enforcement of the mechanics liens. The Counterclaim asserts the liens are invalid.

Plaintiffs [Lund and B & B] have already alleged meritorious defenses to the Counterclaim. The defenses to the Counterclaim are readily apparent in the original Complaint.

■ ¶ 30 The complaint alleges that Lund entered into a contract with the Browns to build a house, that Lund contracted with B & B to install drywall, and that the Browns failed to pay Lund and B & B for work done. In particular, the complaint states that "Lund performed the various items of labor and work, and furnished the materials necessary for the construction of the House *in accordance with Lund's agreement with the Browns,* including subcontracting with B & B and others." (Emphasis added.) Claims one and two of the counterclaim essentially allege that Lund and B & B breached their respective contracts by failing to perform, or negligently performing, numerous contractual obligations. Claim three alleges that Lund and B & B maliciously filed mechanic's liens containing erroneous amounts owed and incorrect completion dates.

¶ 31 Obviously, the complaint and counterclaim are based on the same disputed facts surrounding the performance of the same contract. The respective allegations present genuine issues of material fact, the resolution of which, one way or the other, will necessarily affect each party's ability to recover for its own claims. For example, Lund specifically alleged that he performed "in accordance" with the contract, while the Browns allege the opposite. It makes no difference for our purposes that the counterclaim is more specific than Lund's and B & B's complaint. The critical fact remains that both positions cannot be correct. In short, if Lund and B & B prove their claims at trial, the Browns cannot recover on their counterclaims.

¶ 32 This is in essence a simple contract claim. Both the complaint and the counter-

claim turn upon the essential question of whether the contract was breached. In light of the fact that the trial court already had possession of Lund's and B & B's complaint, there appears little more Lund and B & B realistically could have done, short of proving their claims in an evidentiary hearing, to "show" the trial court their meritorious defense. Thus, we hold that Lund and B & B adequately showed the trial court their proposed meritorious defense. The trial court erred in ruling otherwise.

## CONCLUSION

¶ 33 We reverse the trial court's denial of Lund's and B & B's motion to vacate the default judgments. The arguable applicability of the bankruptcy stay sufficiently excused them from replying to the Browns' counterclaim under rule 60(b). In addition, Lund and B & B have shown a meritorious defense to the counterclaim.

¶ 34 REVERSED and REMANDED.

¶ 35 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.