2021 UT 33

IN THE

## SUPREME COURT OF THE STATE OF UTAH

BROOKELYN GILLMAN, CINDY MAUGHAN, CHANCELOR MAUGHAN,
AND JOHN MAUGHAN,
*Appellants,*

*v.*

GARY WALKER GILLMAN AND LANCE FINN GILLMAN,
*Appellees*.

No. 20190404
Heard November 9, 2020
Filed July 22, 2021

On Interlocutory Appeal

Fourth District, Spanish Fork
The Honorable Jared Eldridge
No. 180300090

Attorneys:

James K. Tracy, James C. Dunkelberger, and Hyrum J. Bosserman,
Salt Lake City, for appellants

Michael F. Skolnick, Jeremy R. Speckhals, and Calvin C. Curtis,
Salt Lake City, for appellees

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE
HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1 The defendants in this case missed the deadline to file an answer. The court clerk entered their default and the plaintiffs moved for default judgment. The defendants quickly opposed the motion and requested that the default certificate be set aside under Utah Rule of Civil Procedure 55(c). The district court granted the defendants' request, concluding they had shown "good cause" under the rule. The plaintiffs then filed this

interlocutory appeal, arguing the district court abused its discretion in setting aside the default certificate.

¶2   We affirm.

**BACKGROUND**

¶3   Decedents Glade and Betty Gillman left behind trusts for the benefit of their children: appellees Gary Walker Gillman and Lance Finn Gillman (collectively, the uncles), along with two other siblings who are deceased. The deceased siblings' share was to pass to their children: appellants Brookelyn Gillman, Cindy Maughan, Chancelor Maughan, and John Maughan (collectively, the cousins), along with two additional non-party cousins. After becoming concerned with their uncles' handling of the trusts, the cousins sued Gary Gillman for alleged mismanagement of the trusts and both uncles for unjust enrichment. The cousins also sought an accounting of trust funds and a declaratory judgment establishing their rights under the trusts.

¶4   The cousins filed their complaint in May 2018. The uncles timely moved for dismissal or, in the alternative, for summary judgment on each claim. The cousins opposed the motion to dismiss and moved the court to convert the motion to one for summary judgment under rule 56 of the Utah Rules of Civil Procedure. They also requested that the summary judgment disposition be delayed so the parties could conduct discovery.

¶5   On October 10, 2018, the district court heard argument on the matter and orally granted the motion to convert. The court deferred ruling on the summary judgment motion and ordered a period of discovery. At the end of the hearing, the court ordered the cousins to prepare an order memorializing its decision. Over a month later, on November 16, 2018, the cousins' counsel sent the uncles' counsel, Calvin Curtis (Curtis), a proposed order.

¶6   Two weeks later, Curtis emailed the cousins' counsel, informing them he had been away for the Thanksgiving holiday and would look at the order and respond the following Monday. But he did not follow up. Just over five weeks later, on January 8, 2019, the cousins' counsel emailed Curtis again to inform him they would file the order on January 11 if Curtis did not respond. Counsel also wrote that they anticipated the uncles' answer would be due by the end of January.

¶7   On January 10, Curtis responded that the order was "fine," that the uncles consented to entry, and that he would "be back in touch shortly on the remainder" of the email. The cousins'

counsel filed the order and the court entered it on January 16, 2019. The order specified that the uncles' answer was due within fourteen days of the entry of the order, which was January 30.

¶8 On February 1, two days after the answer deadline, Curtis emailed the cousins' counsel and informed them that the uncles were going to engage separate litigation counsel and Curtis expected to "have word on that within a couple days." A week later, on February 8, the cousins' counsel emailed Curtis and asked if he would be filing an answer. Curtis did not immediately respond.

¶9 On February 14, the cousins filed a proposed order entering the uncles' default. It was entered the next day. Four days later, Curtis emailed the cousins' counsel and informed them that the uncles had engaged separate litigation counsel, who would be in touch about the answer and proposed litigation schedule. The cousins' counsel did not respond. Instead, on February 20, they filed a motion for default judgment.

¶10 Five days later, the uncles filed a motion opposing default judgment, which included a footnote requesting "that the Court set aside [the] default certificate."[1] It included an affidavit from Curtis, which stated that: (1) on or about February 1, he advised the cousins' counsel that he would "be engaging separate litigation counsel"; (2) he had interacted with litigation counsel and their firm on other matters but first contacted them about the instant case on January 31, 2019; (3) he had "experience in litigating trust and estate matters," but had reduced his litigation practice, and because the previous motion hearing had been "focused . . . on procedural rules," the advisability of hiring separate counsel was "reinforced in [his] mind"; (4) between January 31 and February 19, he communicated with litigation counsel about the mechanics of their involvement in the matter but never discussed a due date for the answer; and (5) both parties had previously sought and received extensions in the case,

---

[1] *See* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2692 (4th ed. 2021) (noting that "federal courts often view opposition to a motion for the entry of a default judgment as a motion to set aside the default [certificate], whether or not a formal motion under Rule 55(c) has been made").

but Curtis had never requested an extension for the answer, nor did he "envision or foresee the possibility of entry of default based on a three week delay" in filing the answer.

¶11 Also included as an exhibit to the opposition was the uncles' proposed answer, in which they asserted the following defenses: (1) failure to state a claim upon which relief can be granted; (2) expiration of the statute of limitations on one or more claims; (3) waiver, release, and estoppel; and (4) unclean hands.

¶12 The district court denied the cousins' motion for default judgment and granted the uncles' request to set aside the default certificate. In its written order, the court noted that the case was "a close call." To determine whether the uncles had shown "good cause" to set aside the default certificate under rule 55(c), the court considered factors that have been outlined by the court of appeals in *Pierucci v. U.S. Bank, NA*, 2015 UT App 80, ¶ 9, 347 P.3d 837, and *Roth v. Joseph*, 2010 UT App 332, ¶ 16, 244 P.3d 391. Specifically, the court analyzed "whether the default was willful, whether defendant alleges meritorious defenses, whether defendant acted expeditiously to set aside the default certificate, any prejudice to plaintiff and the existence of a public interest in the outcome."

¶13 First, the court found that, while Curtis "could have been more diligent," it was "not convinced that [his] omissions r[ose] to the level of willfulness." Next, the court recognized that the uncles had asserted meritorious defenses and had acted expeditiously to set aside the default certificate and oppose the motion for default judgment. The court rejected the cousins' contention that they would be prejudiced if the default certificate were set aside. And it found that the public interest weighed in favor of deciding the case on the merits because "Utah courts disfavor default judgments."

¶14 The cousins sought this interlocutory appeal of the court's decision. We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶15 We review a district court's decision to set aside a default certificate for an abuse of discretion. *Lund v. Brown*, 2000 UT 75, ¶ 9, 11 P.3d 277. While the "court has broad discretion in deciding whether to set aside a default [certificate]," a "decision premised on flawed legal conclusions . . . constitutes an abuse of discretion." *Id.* (citation omitted).

## ANALYSIS

¶16 The cousins contend that the district court abused its discretion in setting aside the entry of default in this case. Their primary argument is that to show "good cause" to set aside a default certificate under rule 55(c), the moving party must establish as a threshold matter that some event, exigency, or other cause beyond the party's own inaction caused the default. They argue that if the defaulting party cannot proffer some reasonable justification for the default along these lines, the party has necessarily not shown "good cause." And they assert that because the uncles did not offer any explanation for their late filing other than their counsel's inaction, the uncles did not demonstrate good cause as a matter of law, and the district court should not have proceeded to consider whether other equitable factors—such as the ones identified by the court of appeals in *Roth* and *Pierucci*—weighed in favor of setting aside the default.

¶17 As we will explain, this is an incorrect reading of rule 55(c).

### I. THE RULE 55(C) "GOOD CAUSE" STANDARD

¶18 When a party fails "to plead or otherwise defend as provided by" our rules of civil procedure, the opposing party may request that the clerk of court enter default—sometimes called a default certificate—against the defaulting party. UTAH R. CIV. P. 55(a). This is "an interlocutory step" taken before the opposing party moves for default judgment under rule 55(b). 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2692 (4th ed. 2021).[2] Obtaining an entry of default is not an onerous task. "[A]ll that must be shown . . . is that the

---

[2] "In construing our [rules of civil procedure], we freely refer to authorities which have interpreted the federal rule[s]" where the state and federal rules are "nearly identical." *See Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 805 P.2d 164, 168 (Utah 1990). *Compare* FED. R. CIV. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."), *with* UTAH R. CIV. P. 55(c) ("For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).").

defendant has failed to answer . . . in a timely fashion." *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998).

¶19 Once a default certificate is entered, the defaulting party may move for it to be set aside under rule 55(c). A district court may grant such a request "[f]or good cause shown." UTAH R. CIV. P. 55(c).

¶20 "Good cause" is not defined by our rules of civil procedure. Black's Law Dictionary defines "good cause" as a "legally sufficient reason"—"often the burden placed on a litigant . . . to show why a request should be granted or an action excused." *Good Cause*, BLACK'S LAW DICTIONARY (11th ed. 2019). Accordingly, rule 55(c) requires only that a movant make a showing that is sufficient to persuade the district court that the default should be set aside. Nowhere does the rule require the movant to show that the default was caused by an event, exigency, or other external cause.

¶21 The cousins essentially read rule 55(c) to require the moving party to show good cause *for the default*. But that is not what the rule says. It provides: "For good cause shown the court may set aside an entry of default." UTAH R. CIV. P. 55(c). And as discussed above, good cause is the burden placed on the movant to show why a request should be granted. Thus, in this context, the movant must show why there is *good cause to set aside the default*—not why there is *good cause for the default*. Of course, a party might argue that a default certificate should be set aside because the late filing was caused by events beyond the party's control. Indeed, a party could proffer any fact or factor that is relevant to determining whether there is good cause to set aside a default. But the cousins' reading of rule 55(c) inserts particular requirements that are simply not found in the text of the rule. *See Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 21, 428 P.3d 1096 ("We will not infer substantive terms into the text that are not already there." (citation omitted)).

¶22 The cousins also argue that their reading of the rule is supported by our appellate case law. They assert that "Utah appellate courts have consistently required some event, exigency, or other cause to justify setting aside default or default judgment." This may be an accurate observation of the factual circumstances that are often involved in such appeals. But the cousins have not cited any case involving rule 55(c) in which we or the court of appeals have held that "good cause" encompasses the mandatory threshold showing they urge.

¶23 Further, the cousins rely heavily on case law interpreting the "excusable neglect" standard found in rule 60(b)(1). In those cases, we have held that "excusable neglect requires some evidence of diligence in order to justify relief." *Jones v. Layton/Okland*, 2009 UT 39, ¶ 20, 214 P.3d 859; *see also Sewell v. Xpress Lube*, 2013 UT 61, ¶ 29, 321 P.3d 1080 ("To qualify for relief under rule 60(b)(1), a party must show he has used due diligence. Due diligence is established where the 'failure to act was the result of . . . the neglect one would expect from a reasonably prudent person under similar circumstances.'" (alteration in original) (citation omitted)).

¶24 The cousins assert that our analysis of the excusable neglect standard applies equally here because the standard for setting aside a default certificate under rule 55(c) is the same as the standard for vacating a default judgment under rule 60(b). But that is incorrect.

¶25 While a default certificate may be set aside for "good cause shown," UTAH R. CIV. P. 55(c), a court is given discretion to vacate a default judgment only upon a showing of, among other things, "mistake, inadvertence, surprise, or excusable neglect," *id.* 60(b)(1). And "the vacation of a default judgment is subject to the explicit provisions of Rule 60(b), which places additional restraints upon the court's discretion." 10A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2692; *see* UTAH R. CIV. P. 60(c) (establishing a filing deadline applicable to a motion under rule 60(b)(1)). Thus, the standard to set aside a default certificate is lower than the standard necessary to set aside a default judgment. *See* 10A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2696 ("Any of the reasons sufficient to justify the vacation of a default judgment under Rule 60(b) normally will justify relief from a default entry and in various situations a default entry may be set aside for reasons that would not be enough to open a default judgment.").

¶26 "Th[e] distinction [between relief from a default certificate and a default judgment] reflects the different consequences of the two events and the different procedures that bring them about." *Id.* § 2692. A default certificate is but a step on the way to a default judgment. *See* UTAH R. CIV. P. 55; *Skanchy*, 952 P.2d at 1076; *Roth v. Joseph*, 2010 UT App 332, ¶¶ 15, 17, 244 P.3d 391. In contrast, a default judgment generally ends the litigation and requires a more onerous showing. *See* UTAH R. CIV. P. 55(b)(2) (providing, for example, that a court may hold a hearing to

establish damages or "the truth of any averment, . . . or to make an investigation of any other matter" before entering a default judgment). Thus, a party seeking relief from a default judgment bears a higher burden than a party seeking only to set aside a default certificate.

¶27 The federal courts interpret their rules similarly. *See, e.g.,* *Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*, 78 F. Supp. 3d 1363, 1371 (D. Colo. 2015) ("The good cause required for setting aside an entry of default 'poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b).'" (citation omitted)); *Insituform Techs., Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349, 1352 n.2 (N.D. Ga. 2008) ("The 'excusable neglect' standard . . . is more rigorous than the 'good cause' standard." (citation omitted)).

¶28 This is not to say that cases involving rule 60(b)(1) are irrelevant to the rule 55(c) analysis. While the standards vary, we note that oftentimes the *reasons* for relief from either type of default will be similar. *See* 10A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE §§ 2694, 2696. So, rule 60(b)(1) cases may shed light on circumstances and factors that will often be relevant to a rule 55(c) analysis. However, these cases have not grafted additional requirements onto rule 55(c).[3]

¶29 Accordingly, we reject the cousins' argument that the good cause standard requires a movant to make an initial showing that the default was caused by some event, exigency, or other external cause before considering any other relevant factors.

¶30 Because we have not previously had occasion to interpret rule 55(c), we take this opportunity to identify some guiding

---

[3] This case has highlighted an inconsistency in our rules of civil procedure. Rule 6(b)(1)(B) requires that a party show excusable neglect if moving the court to extend a deadline after that deadline has expired. But if that same party fails to move the court for an extension, has a default entered against them, and then moves to have that default certificate set aside, the party need only show good cause. *Compare* UTAH R. CIV. P. 6(b)(1)(B), *with id.* 55(c). We direct our rules committee to review this incongruity and to determine whether it is necessary to provide further guidance as to the interplay between the two rules.

principles to assist district courts in analyzing whether to set aside a default certificate. Vacatur of a default is an equitable remedy that necessarily requires the district court to exercise its discretion and consider the facts unique to each case. "By their nature, equitable inquiries are designed to be flexible, taking into account all relevant factors in light of the particular circumstances." *Jones*, 2009 UT 39, ¶ 17. In other words, the movant can assert, and the court may consider, any fact relevant to the decision to set aside a default because "the question is always whether the particular relief sought is justified under principles of fundamental fairness in light of the particular facts." *Id.*

¶31 With that in mind, any doubts should be resolved in favor of setting aside a default certificate and allowing the case to proceed on the merits. *See, e.g.*, *Helgesen v. Inyangumia*, 636 P.2d 1079, 1081 (Utah 1981) (noting that courts should exercise discretion "in furtherance of justice and should incline towards granting relief in a doubtful case to the end that the party may have a hearing"). The policy that "courts should be liberal in granting relief against default judgments so that cases may be tried on the merits" is equally applicable to default certificates. *See Erickson v. Schenkers Int'l Forwarders, Inc.*, 882 P.2d 1147, 1149 (Utah 1994). So, underlying any inquiry into whether a default certificate should be set aside is the principle that defaults generally are disfavored and cases should be tried on the merits where possible.

¶32 But we recognize the competing need for judicial efficiency and adherence to deadlines. "In exercising discretion under Rule 55(c), the court will be very cognizant of the competing policies and values that are relevant to entering defaults and setting them aside. Both the default entry and judgment play an important role in the maintenance of an orderly, efficient judicial system." 10A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2693 (footnote omitted). If parties were able to miss deadlines without recourse, it would delay the litigation process and place unnecessary strain on the judicial system. Thus, the entry of default can be "a useful remedy to a good faith litigant who is confronted by an obstructionist adversary" and "a means of encouraging an unwilling or uncooperative party to honor the rules established for . . . litigation." *Id.*

¶33 These competing policies illustrate why the district court is granted wide discretion in its rule 55(c) determination: the court

is in the best position to know whether the conduct of a defaulting party is such that the need to enforce deadlines in a particular case outweighs the general policy that cases should be adjudicated on the merits.

¶34 Our court of appeals has identified several factors that could be relevant to this determination in a given case: "whether the default was willful, whether the defendant alleges a meritorious defense, whether the defendant acted expeditiously to correct the default, whether setting the default aside would prejudice the plaintiff, and the extent, if any, to which the public interest is implicated." *Roth*, 2010 UT App 332, ¶ 16; *see also Pierucci v. U.S. Bank, NA*, 2015 UT App 80, ¶ 9, 347 P.3d 837. These factors have also appeared frequently in federal case law applying rule 55(c). *See, e.g.*, *In re OCA, Inc.*, 551 F.3d 359, 369 (5th Cir. 2008); *Let's Go Aero*, 78 F. Supp. 3d at 1371; *Peoples v. Fisher*, 299 F.R.D. 56, 59 (W.D.N.Y. 2014); *Insituform Techs.*, 588 F. Supp. 2d at 1352.

¶35 We agree that these considerations could be relevant in an appropriate case. However, we make clear that these factors do not form a "test" that must be applied in all circumstances. Rather, we reiterate that "[e]quitable inquiries defy distillation into any formal legal test; instead, the question is always whether the particular relief sought is justified under principles of fundamental fairness in light of the particular facts." *See Jones*, 2009 UT 39, ¶ 17. We caution that not every principle will weigh equally or be relevant in a particular case. And the factors identified are not an exhaustive list. A district court can consider anything that is relevant to determining whether the default certificate should be set aside. But because the factors identified in *Roth* may often be relevant to a rule 55(c) inquiry, we briefly discuss each one and offer related considerations that could be relevant in individual cases.

¶36 First, a court could consider whether the defaulting party's failure to answer was willful. "A *willful default* is an 'intentional failure' to respond to litigation." *In re OCA, Inc.*, 551 F.3d at 370 n.32 (citation omitted). "Mere negligence or carelessness is insufficient to support a finding of willfulness. Willfulness requires egregious conduct that is not satisfactorily explained," such as "when a defendant ignores a complaint without action and fails to offer an explanation for its failure to respond to a motion or pleading," *Peoples*, 299 F.R.D. at 59 (citations omitted), or "cho[oses] to play games," *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (citation omitted).

¶37 Likewise, a court could consider more generally the defaulting party's conduct throughout the litigation—assuming some litigation has taken place, as it has here. For example, if a party has been actively engaged or otherwise diligent in the case and the default appears to be an anomaly, that would weigh in favor of vacating the entry of default. But if the party has been repeatedly dilatory or otherwise noncooperative, the court may decide default is warranted and decline to set it aside. *See* 10A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2693 ("The default procedure offers a useful remedy to a good faith litigant who is confronted by an obstructionist adversary.").

¶38 Next, a court could consider whether the defaulting party acted promptly to cure the default. There is no hard-and-fast rule to determine what constitutes prompt action in every case. Courts should look at the response to the default in relation to the overall context of the litigation.

¶39 Further, a court could consider whether the non-defaulting party would be unduly prejudiced if the default certificate were vacated. Some courts have held that delay by itself is insufficient to show prejudice. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) (recognizing that "delay standing alone does not establish prejudice"). These courts require a showing that the delay will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Peoples*, 299 F.R.D. at 61 (citation omitted).

¶40 But although we agree that delay can be especially pernicious when it leads to loss of evidence or witnesses, or otherwise influences litigation, we decline to categorically disqualify delay itself as a sufficient basis for a finding of prejudice. Instead, we leave to the district court's discretion whether delay in a particular case has become sufficiently egregious to constitute prejudice on its own. And it is appropriate for the court to consider whether, if any harm was done to the non-defaulting party, the harm can be remedied with a sanction less drastic than default. *See Jones*, 2009 UT 39, ¶ 22 n.15 ("The district court's equitable discretion extends to fashioning the remedy as well as granting it. In other words, a district court may, as part of exercising its equitable discretion, in appropriate cases, condition the relief from judgment on the moving party's payment of attorney fees incurred by the nonmoving party as a

result of the moving party's neglect or satisfaction of any other equitable condition.").

¶41 Additionally, it could be relevant whether the defaulting party has a meritorious defense. This is a low bar. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (citation omitted). This does not mean the court must consider whether the defendant will ultimately succeed on the merits. A meritorious defense is merely an indication of the defendant's ability and desire to litigate the case on the merits. Conversely, "if the defendant fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party," the court may exercise its discretion not to allow the case to proceed. *Lacy*, 227 F.3d at 293. In such an instance, setting aside the default would be futile. Our policy favoring adjudication on the merits would be overcome because there would be no real legal issues to adjudicate.

¶42 We again emphasize that district courts have wide discretion in determining whether a party has shown good cause. The considerations we have discussed here are by no means a complete list, and they may not be relevant in every case. Courts should take the unique circumstances of each case into consideration and determine "whether the particular relief sought is justified under principles of fundamental fairness in light of the particular facts." *See Jones*, 2009 UT 39, ¶ 17.

## II. THE DISTRICT COURT'S RULE 55(C) ORDER

¶43 To prevail on appeal, the cousins must demonstrate that the district court abused its discretion in vacating the default certificate. "Though broad, the court's discretion is not unlimited. As a threshold matter, a court's ruling must be 'based on adequate findings of fact' and 'on the law.'" *Lund v. Brown*, 2000 UT 75, ¶ 9, 11 P.3d 277 (citation omitted). In light of the principles and considerations we identify today and the district court's findings, the cousins have not carried their burden.

¶44 We find no error of law in the district court's ruling. In analyzing whether to set aside the default certificate, the district court considered the factors previously identified by the court of appeals, specifically: "whether the default was willful, whether the defendant alleges a meritorious defense, whether the defendant acted expeditiously to correct the default, whether setting the default aside would prejudice the plaintiff, and the extent, if any, to which the public interest is implicated." *See Roth*

*v. Joseph*, 2010 UT App 332, ¶ 16, 244 P.3d 391; *see also Pierucci v. U.S. Bank, NA*, 2015 UT App 80, ¶ 9, 347 P.3d 837. As we have discussed, a court is not required to apply these factors. But where they are relevant, it is certainly not legal error to do so. A court may consider any relevant factor.

¶45 And the court's decision was supported by adequate findings. The district court determined that the uncles' default was not willful. It recognized that the answer the uncles filed as an exhibit alleged four defenses, all of which it categorized as "meritorious." The court found that the uncles acted expeditiously in moving to set aside the default and oppose the motion for default judgment. The court determined setting aside the default certificate would not prejudice the cousins. And it awarded the cousins attorney fees to compensate for the cost incurred in moving for the default certificate and default judgment. Finally, the court recognized that although the case was a "close call," the public interest weighed in favor of adjudicating the case on the merits.

¶46 The cousins argue that the case before us is like *Jones v. Layton/Okland*, in which we affirmed a district court's refusal to vacate a default judgment because the defaulting party failed to show "even a minimum level of diligence" prior to default entering. 2009 UT 39, ¶ 29, 214 P.3d 859. In *Jones* we noted that in the realm of a rule 60(b) motion to vacate a default judgment, "excusable neglect requires some evidence of diligence in order to justify relief." *Id.* ¶ 20. Upon examination of the record, we found it to be "utterly devoid of any diligence by Jones that would justify his neglect." *Id.* ¶ 28. So we were able to affirm that district court's decision because there was "simply no basis in the record for us to conclude that the district court abused its discretion by refusing to set aside" the default judgment in that case. *Id.* ¶ 30.

¶47 We disagree with the cousins' comparison. The uncles' conduct is not akin to the defendant's behavior in *Jones*, which was "utterly devoid" of diligence.[4] The record shows that the

---

[4] It is important to remember that the standard of review in *Jones* and in this case is abuse of discretion. So any comparison of facts across cases should be done with care. When reviewing for an abuse of discretion, we are not determining whether the district court was correct or objectively right. Rather, we are looking at the case through a lens of deference and determining

(continued . . .)

uncles were actively involved in the case—they filed a timely motion to dismiss, participated in oral argument, and communicated with opposing counsel. And when Curtis determined he was out of his element, he sought to engage litigation counsel and informed the cousins' counsel of this fact. When the default certificate was entered, the uncles responded within days. It is arguable that a court could find this level of diligence sufficient to warrant vacation of a default judgment, not to mention a default certificate. "Even where a course of events does not make it strictly impossible for a party to meet its legal obligations, the party's choice to attend to another matter, or even its simple failure to attend to its legal obligation, may be sufficiently diligent and responsible, in light of the attendant circumstances, to justify excusing it from the full consequences of its neglect." *Id.* ¶ 22. So while the court in *Jones* was within its discretion to deny relief from a default judgment under the circumstances before it, so too is the court here within its discretion to grant relief from a default certificate in light of the facts here.

¶48 Further, we note that the delay caused by the uncles' failure to respond was not substantial in the context of the litigation—considering the extensions the parties had given each other and the time it took for the cousins to file their proposed order. Indeed, the cousins' briefing to this court acknowledges that "[t]he parties, through counsel, communicated for months leading up to the deadline to answer."

¶49 The district court determined these circumstances constituted good cause to set aside the default. And it did not abuse its discretion in doing so.[5]

---

whether the district court's ruling was within the bounds of its wide discretion.

[5] This does not mean that we condone Curtis's handling of this facet of the litigation. He should have either timely filed the uncles' answer or requested an extension while he assisted the uncles in obtaining litigation counsel. That said, we note that our Standards of Professionalism and Civility state that, "Lawyers shall not cause the entry of a default without first notifying other counsel whose identity is known, unless their clients' legitimate rights could be adversely affected." UTAH STANDARDS OF PROFESSIONALISM & CIVILITY 16. We do not intend this as a

(continued . . .)

**CONCLUSION**

¶50  In determining whether there is good cause to set aside a default certificate under rule 55(c), a district court should weigh any relevant facts and circumstances of the case before it and decide whether it would be fundamentally fair to grant the requested equitable relief. Adjudication on the merits is preferred, and courts should err on the side of granting rule 55(c) motions where it is appropriate. We conclude the district court did not abuse its discretion in finding there was good cause to set aside the default certificate here. We affirm.

---

criticism of the cousins' counsel in this case. But in general, when counsel knows the identity of opposing counsel, they should notify opposing counsel explicitly that they intend to move for entry of default before doing so "unless their clients' legitimate rights could be adversely affected." *Id.*