**2023 UT 15**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

EUGENE VINCENT WOOD,
*Appellant.*

No. 20210470
Heard October 5, 2022
Filed June 29, 2023

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable James Blanch
Nos. 191910007, 201905761

Attorneys:

Sean D. Reyes, Att'y Gen., Jeffrey D. Mann, Asst. Solic. Gen.,
Bronwen L. Dromey, Salt Lake City, for appellee

Nathalie S. Skibine, Ralph W. Dellapiana, Salt Lake City, for
appellant

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE
HAGEN, and JUSTICE POHLMAN joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1 The question before us in this interlocutory appeal is whether the Salt Lake County Jail (jail) violated Utah's Interception of Communications Act (Interception Act or Act), which generally prohibits wiretapping, when it recorded calls made by inmate Eugene Vincent Wood on the jail's telephones. *See* UTAH CODE §§ 77-23a-1 to -16. The State wants to use some of the recordings as evidence against Wood in court. Wood moved to suppress the recordings, arguing that the jail's interception of

his calls violated the Interception Act. If Wood is correct, then the Act requires that the recordings be suppressed.

¶2    As a matter of first impression, we hold that the jail's monitoring and recording of Wood's calls did not run afoul of the Act because it fell within the Act's consent exception. This exception provides that if one of the parties to a telephone call consents to the interception of the call, then the interception is lawful. That is what happened here. The jail notified Wood in numerous ways that it may record and monitor all non-legal inmate calls. Knowing this, Wood chose to use the jail's phones anyway. In doing so, he impliedly consented to the conditions the jail had placed on the use of its phones.

¶3    Accordingly, the jail's interception of Wood's calls did not violate the Interception Act. And the district court properly denied his motion to suppress the recordings. We affirm.

## BACKGROUND

¶4    Eugene Wood was charged with kidnapping and assaulting his wife. In the criminal proceeding that followed, the district court entered a pretrial protective order that prohibited Wood from contacting his wife in any way. Despite this, Wood made hundreds of calls to his wife from the Salt Lake County Jail. The State alleges that during these calls, Wood threatened his wife, pressuring her to assert her spousal privilege and to refuse to cooperate with the prosecution. These conversations were recorded in accordance with the jail's policy of recording all inmate telephone calls, except those between inmates and attorneys.

¶5    When it became apparent to the State that Wood's wife would not cooperate with the prosecution, the State moved to admit recordings of several phone calls between Wood and his wife. The State also filed new charges based on the recordings: one count of tampering with a witness; two counts of retaliation against a witness, victim, or informant; and five counts of violating a pretrial protective order. Wood moved to suppress the recordings in both cases.

¶6    The district court held an evidentiary hearing on the motion to suppress. At the hearing, the jail's records supervisor testified about the jail's phone recording policy. She explained that the jail contracts with a private telephone carrier, Inmate Calling Solutions (ICS), to provide phone services to inmates. As part of its contract, ICS records and stores all calls made by

2

inmates, except calls with an attorney. And jail staff monitor these calls to ensure facility safety. If staff learn of any suspected crimes occurring outside the jail, they must report it to the South Salt Lake Police Department; and if they learn of any suspected crimes occurring inside the jail, they must report it to the appropriate jail staff for further investigation.

¶7    The records supervisor also testified that she frequently provides recordings of inmate calls to law enforcement officers upon request. This disclosure process is governed by Utah's Government Records Access and Management Act (GRAMA). *See* UTAH CODE §§ 63G-2-101 to -901.

¶8    Finally, the records supervisor testified that inmates are warned in three different ways that their calls may be recorded and monitored. First, new inmates receive a handbook, which explains that "the jail may monitor and/or record telephone calls, except those made to a prisoner's attorney." Second, a placard located next to the telephones warns inmates that phone calls are recorded and subject to monitoring at any time. And third, a recording is played to both the inmate and the outside party before each call, which again notifies the inmate that the call is being recorded and is subject to monitoring.

¶9    To obtain the recordings at issue here, a deputy district attorney, through his paralegal, requested recordings of Wood's calls from the jail. He used GRAMA Form 007, "Prisoner Telephone Monitoring System Recording Request Form," in which he confirmed that he represented a government entity enforcing the law and that the recordings were necessary for an investigation. And the jail provided him with the recordings.

¶10   In response to the evidence adduced at the hearing, Wood argued that the deputy district attorney's failure to obtain a warrant or court order for the recordings violated the Interception Act. The State countered that a warrant was not necessary because the relevant phone calls fell under two exceptions to the Act: the consent exception and the law enforcement exception.

¶11   The district court agreed with the State's reasoning and denied Wood's motion to suppress. Regarding the consent exception, the court explained that Wood "impliedly consented to the interception of the phone calls by engaging in the calls despite [knowing] they could be intercepted." And the court also concluded that the calls were exempt under the law enforcement exception. *See id.* § 77-23a-3(8)(a)(ii).

¶12  Wood petitioned for permission to appeal the court's interlocutory order denying his motion to suppress, which we granted. The cases have been consolidated. On appeal, Wood challenges the district court's conclusions that (1) he consented to the recording and disclosure of his jail calls, (2) the Interception Act's law enforcement exception applied to the phone calls, and (3) the recordings could be disclosed to the deputy district attorney without a warrant.

¶13  We have jurisdiction under Utah Code section 78A-3-102(3)(h).

## STANDARD OF REVIEW

¶14  "[T]he interpretation of a statute presents a question of law that we review for correctness." *State v. Evans*, 2021 UT 63, ¶ 20, 500 P.3d 811 (cleaned up). Thus, "we accord the trial court's legal conclusion[s] no particular deference on review." *State v. Mitchell*, 779 P.2d 1116, 1123 (Utah 1989) (cleaned up).

## ANALYSIS

¶15  We first address Wood's argument that suppression was required because the jail violated the Interception Act when it recorded his calls and then disclosed them to the deputy district attorney. Wood asserts that neither the consent exception nor the law enforcement exception apply here. But we agree with the district court that Wood impliedly consented to the interception of his calls. We conclude that the jail sufficiently notified Wood that phone calls may be recorded and monitored. And by using the phones with this knowledge, Wood implicitly consented to the conditions the jail had placed upon use of its phones. Accordingly, we conclude that the interception falls within the Interception Act's consent exception. And consequently, the jail's disclosure of the calls to the deputy district attorney did not offend the statute.

¶16  Because we conclude that the consent exception applies here, we need not consider Wood's second argument regarding the applicability of the law enforcement exception.

¶17  Next, we consider Wood's argument that another statute, Utah Code section 77-23b-4, provides an alternative basis to suppress the recordings because it independently required the State to get a warrant to obtain the recordings from the jail. We reject this argument because this statute does not provide for suppression as a remedy, and Wood has not persuaded us that it applies in these circumstances.

¶18 Accordingly, we affirm the district court's denial of Wood's motion to suppress the recordings of his jail calls.

## I. UTAH'S INTERCEPTION ACT DOES NOT REQUIRE SUPPRESSION OF THE RECORDINGS OF WOOD'S CALLS

¶19 Wood's primary argument is that the district court should have suppressed the recordings of his calls because the jail violated the Interception Act when it recorded and disclosed them. He asserts that because his calls were illegally intercepted and disclosed, the Interception Act prohibits the use of the contents of those calls in any court proceeding.

¶20 This is a question of first impression for this court. However, numerous federal appellate courts have addressed similar questions in the context of a nearly identical federal statute.

¶21 Utah's Interception Act mirrors Title III of the federal Omnibus Crime Control and Safe Streets Act (Wiretap Act). *See* UTAH CODE §§ 77-23a-1 to -9; 18 U.S.C. §§ 2510–2523. Both statutes have nearly identical language making it "unlawful for a person to 'intercept' 'any wire, oral, or electronic communication'" without court-ordered authorization. *Smith v. U.S. Dep't of Just.*, 251 F.3d 1047, 1049 (D.C. Cir. 2001) (quoting 18 U.S.C. § 2511); *accord* UTAH CODE § 77-23a-4(1)(b)(i) (making it unlawful for a person "to intercept any wire, electronic, or oral communication").

¶22 Both statutes define "intercept" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." UTAH CODE § 77-23a-3(10); 18 U.S.C. § 2510(4). This language effectively creates a general prohibition against all forms of wiretapping, with some specific exceptions. *See, e.g.*, UTAH CODE § 77-23a-4(7)(a); 18 U.S.C. § 2511(2)(c) (consent exception); UTAH CODE § 77-23a-3(8)(a)(ii); 18 U.S.C. § 2510(5)(a)(ii) (law enforcement exception).

¶23 And if a communication is intercepted in violation of the Utah or federal statute, both laws prohibit the *disclosure* and *use* of the contents of that communication. UTAH CODE § 77-23a-4(1)(b)(iii)–(iv); 18 U.S.C. § 2511(1)(b)–(e). Both statutes also allow

an "aggrieved person"[1] to move for suppression of the contents of an unlawfully intercepted communication. UTAH CODE § 77-23a-10(11)(a)(i); 18 U.S.C. § 2518(10)(a).

¶24  As a threshold matter, Utah's Interception Act plainly governs the question before us. It covers interceptions of "wire communications." And those are the factual circumstances here.

¶25  Wood's telephone calls from the jail's phones constituted "wire communications" under the Interception Act. The Act defines a "wire communication" as

> any aural transfer[2] made . . . through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . furnished or operated by any person engaged as a common carrier[3] in providing or operating these facilities for the transmission of intrastate, interstate, or foreign communications.

UTAH CODE § 77-23a-3(19)(a). A "wire communication" "includes the electronic storage of the communication." *Id.* § 77-23a-3(19)(b).

¶26 And when the jail recorded Wood's phone calls, it "intercepted" a wire communication as contemplated by the Act. The jail, through its contractor, "acqui[red] . . . the contents of a[] wire . . . communication through the use of any electronic, mechanical, or other device," thereby "intercepting" those contents. *Id.* § 77-23a-3(10). Further, nothing in the text of the

---

[1] The Interception Act defines "aggrieved person" as "a person who was a party to any intercepted wire, electronic, or oral communication, or a person against whom the interception was directed." UTAH CODE § 77-23a-3(1).

[2] The Interception Act defines an "aural transfer" as "any transfer containing the human voice at any point between and including the point of origin and the point of reception." *Id.* § 77-23a-3(2).

[3] The Interception Act defines a "communications common carrier" as "any person engaged as a common carrier for hire in intrastate, interstate, or foreign communication by wire or radio, including a provider of electronic communication service." *Id.* § 77-23a-3(3).

Interception Act suggests that its protections should be withheld from incarcerated individuals.

¶27   Accordingly, the Interception Act controls our analysis in this case. And because the Act generally prohibits wiretapping, at least one of its exceptions must apply here for the jail's interception of Wood's calls to be lawful. The State argues that two of the statute's exceptions fit these circumstances: the consent exception and the law enforcement exception.

¶28 We agree with the district court that the consent exception applies here. And because this is dispositive, we limit our analysis to that exception and do not address whether the law enforcement exception might also apply.

¶29 The Interception Act's consent exception generally provides that when one party to a communication consents to the interception of that communication, the statute is not violated. The Interception Act states in relevant part that a person "may intercept a wire, electronic, or oral communication if that person is a party to the communication *or one of the parties to the communication has given prior consent to the interception*." *Id.* § 77-23a-4(7)(a) (emphasis added).

¶30  Although we have not previously interpreted the scope of the consent exception in Utah's Interception Act, many federal appellate courts have interpreted identical language in the Wiretap Act. We find their analysis to be helpful and "instructive." *State v. Bradshaw*, 2006 UT 87, ¶ 11, 152 P.3d 288.

¶31 Nine federal circuits have interpreted the consent exception in cases involving prison monitoring of inmate phone calls.[4] And all but one have concluded that the consent exception applied. The lone exception is the Seventh Circuit, where the court was hesitant to apply the consent exception—but still found the recordings to be lawful under the law enforcement exception. *See*

---

[4] *See United States v. Footman*, 215 F.3d 145 (1st Cir. 2000); *United States v. Workman*, 80 F.3d 688 (2d Cir. 1996); *United States v. Hodge*, 85 F. App'x 278 (3d Cir. 2003); *United States v. Hammond*, 286 F.3d 189 (4th Cir. 2002); *United States v. Jones*, 839 F.2d 1041 (5th Cir. 1988); *United States v. Daniels*, 902 F.2d 1238 (7th Cir. 1990); *United States v. Horr*, 963 F.2d 1124 (8th Cir. 1992); *United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996); *United States v. Verdin-Garcia*, 516 F.3d 884 (10th Cir. 2008).

*United States v. Daniels*, 902 F.2d 1238, 1244–45 (7th Cir. 1990); *see also United States v. Feekes*, 879 F.2d 1562, 1565–66 (7th Cir. 1989). Accordingly, no federal appellate court has concluded that recordings of inmate calls should be suppressed because their interception violated the federal Wiretap Act.[5]

¶32 Each federal circuit has its own nuanced take on the consent exception, and each tailors its analysis to the specific facts before it. But upon reading the cases as a whole, an overarching consensus emerges: "It is generally accepted that a prisoner who places a call from an institutional phone with knowledge that the call is subject to being recorded has impliedly consented to the recording." *United States v. Faulkner*, 439 F.3d 1221, 1224 (10th Cir. 2006) (cleaned up).[6] Further, consent may be "express or may be implied in fact from surrounding circumstances indicating that the defendant knowingly agreed to the surveillance." *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) (cleaned up). To determine whether inmates voluntarily consented to the prison's surveillance of their phone calls, the circuit courts paid special attention to the ways in which inmates were notified of the recording or monitoring of their phone calls.

¶33 In *United States v. Verdin-Garcia*, for example, the Tenth Circuit found that the defendant had impliedly consented based on the following facts. 516 F.3d 884, 894 (10th Cir. 2008). The prison had informed Verdin-Garcia in three ways that his calls would be recorded and monitored: (1) he received a handbook at inmate orientation, which stated that "all calls may be monitored"; (2) there were "prominent signs next to the telephones at the prison," which stated in both English and Spanish that "[a]ll calls may be recorded/monitored"; and (3) anytime an inmate placed a call from the facility, a recorded message would prompt the caller "to select English or Spanish, and then inform[] the caller in the language of his choice that all calls are subject to being monitored and recorded." *Id.* Given this evidence, the Tenth Circuit concluded that Verdin-Garcia had

---

[5] We address the Seventh Circuit's concerns in more detail in a later section. *See infra* ¶¶ 37–39.

[6] To support this proposition, the *Faulkner* court cited *Footman*, 215 F.3d at 154; *United States v. Amen*, 831 F.2d 373, 378–79 (2d Cir. 1987); *Hammond*, 286 F.3d at 192; *Horr*, 963 F.2d at 1126; *Van Poyck*, 77 F.3d at 292; and *Faulkner*, 439 F.3d at 1224.

consented to the recording of his phone calls. The court noted that the use "of the prison telephone is a privilege, not a right." *Id.* at 895. And it is a privilege that may come with conditions attached to it—such as the recording and monitoring of all calls. *Id.* So long as the inmate was made aware of the conditions through proper notifications, the court concluded that an inmate's "decision to take advantage of that privilege implies consent to the conditions placed upon it." *Id.* Thus the Tenth Circuit had "no hesitation in concluding that a prisoner's knowing choice to use a monitored phone is a legitimate 'consent' under the Wiretap Act." *Id.* at 894 (cleaned up). We find this analysis persuasive and particularly relevant to the facts of this case.

¶34 We hold that for the consent exception to apply in the correctional facility context, consent may be either express or implied. Concerning implied consent, the record must at least show that (1) the correctional facility sufficiently warned the inmate that the phone lines may be recorded or monitored (or of any other relevant conditions), and (2) the inmate chose to use the facility's phone lines anyway. *See id.* ("A prisoner's voluntarily made choice—even a Hobson's choice—to use a telephone he knows may be monitored implies his consent to be monitored."). We do not require correctional facilities to provide notice in a particular manner. Rather, an implied consent analysis will necessarily be fact specific and vary from case to case based on the notice that was actually provided.

¶35 We conclude that the circumstances here satisfy the consent exception. The jail sufficiently notified Wood that it may record and monitor his calls. Upon his arrival at the jail, the jail provided Wood with an inmate handbook that explained that the jail may monitor and record all telephone calls (except those between an inmate and an attorney). Additionally, every time Wood made a phone call, he was reminded of this by a placard next to the telephones and a message at the beginning of the call. And knowing this, Wood chose to use the jail's phones anyway. Like the Tenth Circuit, we have "no hesitation in concluding that [Wood's] knowing choice to use a monitored phone is a legitimate 'consent'" under the Interception Act. *Id.*

¶36 Wood makes several arguments as to why his knowing use of the jail's monitored phones should not constitute consent. First, he reasons that *acquiescing* to the jail's conditions differs from *consenting* to the jail's conditions. But we find this argument unpersuasive. As we have explained, by using a jail phone subject

to the explicit conditions placed upon such use, Wood implicitly accepted those conditions. And implicit consent is still consent.

¶37 Wood next argues that the coercive nature of being imprisoned, generally speaking, forecloses the possibility of truly voluntary consent. To this end, Wood echoes concerns raised by the Seventh Circuit—the lone circuit hesitant to apply the consent exception in these circumstances.

¶38 In *United States v. Feekes*, the Seventh Circuit ultimately exempted recorded inmate phone calls from the Wiretap Act under the law enforcement exception. 879 F.2d at 1565–66. But the court also included the following dictum in response to the contention that the consent exception also applied because the prisoners had been notified that their calls would be monitored: "To take a risk is not the same thing as to consent. The implication of the argument is that since wiretapping is known to be a widely employed investigative tool, anyone suspected of criminal (particularly drug) activity who uses a phone consents to have his phone tapped . . . ." *Id.* at 1565.

¶39 We agree with the Seventh Circuit that engaging in crime does not in itself imply consent to a wiretap. But those are not the facts here. Nor, as the State points out, is this case about the "dystopian hypothetical world" that the Seventh Circuit hypothesized, where illegal wiretapping is so widespread that consent is implied for anyone who uses a phone. This case is about an inmate who received multiple, specific warnings that the phone lines available to him may be recorded and monitored. It is, of course, true that Wood did not have the opportunity to use an alternative untapped phone line. But "prison inmates have few expectations of privacy in their communications" because "loss of some choice is a necessary consequence of being confined." *Faulkner*, 439 F.3d at 1224 (cleaned up). So the relevant question is not whether Wood freely chose this phone line over an untapped alternative. Instead, "[t]he real issue is whether imposition of a condition is acceptable, so that a choice subject to that condition is considered a voluntary, consensual one." *Id.* at 1224–25 (cleaned up).

¶40 Given the undeniable security concerns implicated by inmates' communications with the outside world, the jail's surveillance policy was a reasonable condition placed on inmates' phone usage. We agree with the majority of federal appellate courts that have considered this question and conclude that an inmate's choice "to use a telephone he knows may be monitored

implies his consent to be monitored." *Verdin-Garcia*, 516 F.3d at 894.

¶41 Additionally, Wood argues that the notice provided by the jail was insufficient. He observes that the jail's notices failed to specifically warn inmates that if they used the phones, it would be assumed that they were consenting to the jail's surveillance. Wood contends that "the notices in the jail did not go as far as the notices in *United States v. Amen*, which stated that calls were monitored and taped and that 'use of institutional telephones constitutes consent to this monitoring.'" (Quoting *United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987).)

¶42 Wood also points out that the notices failed to warn inmates that the recordings would be used in disciplinary or criminal matters. To this end, Wood argues that the notices "were also short of the notice in *United States v. Rivera*, which advised that phone calls were 'subject to recording, monitoring and criminal, civil and/or administrative disciplinary actions.'" (Quoting *United States v. Rivera*, 292 F. Supp. 2d 838, 840 (E.D. Va. 2003).)

¶43 But even though other cases have involved warnings that are more comprehensive than the ones here, it does not follow that those cases describe the only way of providing notice or that the jail's warnings in this case were insufficient. As noted earlier, we do not mandate a particular formula for warning inmates about phone monitoring. Other more comprehensive notices—like the ones found in *Amen* and *Rivera*—are possibly an improvement on the warnings offered here. But they are not the minimum threshold that all notices must meet. And their existence does not render the jail's warnings insufficient. In fact, Wood received warnings that were nearly identical to those found in *Verdin-Garcia*, in which the Tenth Circuit concluded there was implied consent. 516 F.3d at 894. We agree with the Tenth Circuit's analysis and conclude that the jail's notices were sufficient in this case. That said, we encourage correctional facilities in Utah to provide notice of their telephone usage policies that is as clear, understandable, and comprehensive as possible.

¶44 Finally, Wood argues that suppression is still required because he did not consent to the jail's *disclosure* of his calls to the State. He notes that the jail's notices did not mention anything about disclosure or other use of the recordings.

¶45 But Wood's consent to the disclosure of the recordings was not required. The Interception Act prohibits a person from

11

disclosing the contents of a wire communication only where the person "know[s] or [has] reason to know that the information was obtained through the interception of a wire . . . communication in violation of" the Act. UTAH CODE § 77-23a-4(1)(b)(iii). As we have established, the jail's recording of Wood's phone calls did not violate the Act because he impliedly consented to the recording. Accordingly, the Act's prohibition on disclosure of unlawfully obtained information is not applicable.

¶46   Additionally, because the recordings were obtained in an authorized manner, other provisions of the Act may serve to allow the disclosure and use of the recordings in particular circumstances. *See, e.g.*, *id.* § 77-23a-9(3) (stating that information resulting from an authorized intercept can be admitted in judicial proceedings and disclosed "while giving testimony under oath or affirmation in any proceeding," so long as it was obtained as a result of an intercept conducted in accordance with the provisions of the Act).

¶47 In sum, we agree with the district court that Wood impliedly consented to the recording of his phone calls. Accordingly, the jail did not violate the Interception Act when it recorded and disclosed his calls to the deputy district attorney. And the district court correctly denied Wood's motion to suppress on this basis.[7]

---

[7] Wood also argues that inmates should be warned that whatever they say on a jail telephone may be used against them, similar to the *Miranda* requirement that a suspect must be warned that "anything he says can be used against him in a court of law." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). But *Miranda* is neither analogous to nor controlling in this case. The Supreme Court in *Miranda* specified that the decision seeks to protect individuals from "being compelled to incriminate themselves" after being taken into custody because of "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak." *Id.* at 467. But the "inherently compelling pressures" of an interrogation are simply not present during phone calls to friends and family. So *Miranda* does not provide an apt analogy.

## II. CHAPTER 23b DOES NOT REQUIRE SUPPRESSION OF THE RECORDINGS OF WOOD'S CALLS

¶48   Wood's final argument is that even if he consented to the jail's surveillance, a separate chapter in the Utah Code—Chapter 23b of Title 77—independently required the State to "get a warrant to require the disclosure of the jail calls." But this argument fails because Chapter 23b does not provide the remedy that Wood seeks—suppression. And even if it did, Wood has not explained why this chapter applies to the circumstances here.

¶49   As a threshold matter, even if Wood were correct that Chapter 23b required the State to get a warrant to obtain the recordings from the jail, it would not require reversal of the district court's order denying Wood's motion to suppress. This is because Chapter 23b contemplates only two remedies: (1) criminal charges and (2) a civil action with its associated equitable or declaratory relief, damages, and costs and fees. UTAH CODE §§ 77-23b-2(2), -8(2). The suppression of evidence in a criminal proceeding is not an available remedy. So even if the State had violated Chapter 23b, that would not provide an alternative basis to suppress the recordings.

¶50   Moreover, Wood has not explained why Chapter 23b applies to the circumstances here. It is not part of the Interception Act. It is a separate chapter within Title 77 titled "Access to Electronic Communications." The portion relied upon by Wood states, "A government entity may only require the disclosure by a provider of electronic communication services of the contents of an electronic communication that is in electronic storage in an electronic communication system pursuant to a warrant issued under the Utah Rules of Criminal Procedure or an equivalent federal warrant." *Id.* § 77-23b-4(1). According to Wood, because ICS is a "provider of electronic communications" that kept the recordings "in electronic storage on a server," the State needed a warrant to obtain the recordings held on that server.

¶51   But it is not clear that this provision applies to telephone calls—at least, Wood has not explained how it does. The Interception Act's definitions of terms apply to Chapter 23(b). *Id.* § 77-23b-1(2). And as discussed, calls on the jail's telephones fall within the definition of "wire communication" under the Act. *See supra* ¶ 25. And "wire communication" also "includes the electronic storage of the communication." *See supra* ¶ 25. But Chapter 23b, including the specific provision relied upon by Wood, involves "the contents of an *electronic communication*."

UTAH CODE § 77-23b-4(1) (emphasis added). And under the applicable definition, an "electronic communication" specifically "does not include . . . any wire . . . communications." *Id.* § 77-23a-3(5); *see id.* § 77-23b-1(2) ("The definitions of terms in Section 77-23a-3 apply to this chapter.").

¶52 Accordingly, Wood has not persuaded us that Chapter 23b provides a basis to reverse the district court's denial of his suppression motion.

## CONCLUSION

¶53 We agree with the district court that Wood impliedly consented to the jail's recording and monitoring of his phone calls. Thus, the jail's interception of Wood's calls was authorized under the Interception Act's consent exception. Further, Wood has not persuaded us that Chapter 23b provides an alternative basis to suppress the recordings. Accordingly, we conclude that the district court correctly denied Wood's motion to suppress. We affirm.

————————