*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 8**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

YESNEIRI MALDONADO-VELASQUEZ,
*Appellant,*

*v.*

RON J. PETERSON CONSTRUCTION, INC.,
*Appellee,*

No. 20230912
Heard December 8, 2025
Filed April 16, 2026*

On Direct Appeal

Third District Court, Summit County
The Honorable Richard E. Mrazik
No. 170500237

Attorneys:

Rodger M. Burge, Dick J. Baldwin, Steven R. Glauser,
Daniel S. Sorenson, Salt Lake City, Joseph Jardine, Farmington,
for appellant

Vincent J. Velardo, Thomas J. Rollins, Salt Lake City, for appellee

JUSTICE NIELSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, JUSTICE HAGEN, and
ASSOCIATE CHIEF JUSTICE POHLMAN joined.

---

* As of January 31, 2026, "The Supreme Court consists of seven justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

JUSTICE NIELSEN, opinion of the Court:

## INTRODUCTION

¶1   Raul Lopez was driving down Parley's Canyon with Emilio Martinez-Arroyo in the passenger seat of his Volkswagen Jetta. Lopez crashed into the back of a utility trailer hauling construction equipment, sliding underneath it in what's called an "underride crash." Both Lopez and Martinez-Arroyo died instantly.

¶2   The trailer and the truck pulling it were owned by Ron J. Peterson Construction, Inc. (RJP). Martinez-Arroyo's wife, Yesneiri Maldonado-Velasquez, sued RJP for her husband's death. She claimed that RJP was negligent both for causing the crash in the first place and for using a kind of trailer that increased the likelihood of injuries. She proposed calling an expert to discuss various underride guards and how they might have reduced the extent of injury—what is often called an "enhanced-injury" claim.

¶3   RJP moved for summary judgment, arguing that Lopez indisputably caused the crash and that it had no duty to upgrade a trailer that met federal safety guidelines. The district court denied summary judgment on the cause of the crash but granted it on the enhanced-injury claim for lack of duty.

¶4   In a line of cases beginning with *B.R. ex rel. Jeffs v. West*, 2012 UT 11, 275 P.3d 228, we have outlined several principles of duty, two of which are relevant here. First, duties are broad and general to classes of cases, not narrow and specific to particular facts. Second, when an applicable, broad duty exists in statute or common law, courts should not use the factors outlined in *Jeffs*. Rather, courts should use those factors only to determine whether the law should recognize a *new* duty.

¶5   The district court acknowledged that RJP had a general common-law duty, codified in statute, to operate equipment safely on the roadway. But despite acknowledging that a broad duty existed, it followed RJP's lead and defined the duty more narrowly: a duty to alter the trailer. It then used the *Jeffs* factors to consider and reject this duty. This ruling led it to exclude much of Maldonado-Velasquez's proposed expert testimony about the trailer. A jury later found RJP at no fault for the crash. Maldonado-Velasquez now appeals the district court's partial grant of summary judgment and subsequent evidentiary rulings based upon that decision.

¶6    We reverse. The district court erred in two respects. First, it used *Jeffs* to negate an applicable statutory duty. Second, this incorrect duty analysis led it to improperly exclude much of Maldonado-Velasquez's expert testimony on enhanced injury.

## BACKGROUND[1]

¶7    One afternoon, Andrew Davis was driving his work truck down I-80 from Summit County to Salt Lake County. He was pulling a trailer carrying a large forklift belonging to his employer, RJP. He was driving in the far-right lane, going about twenty-five mph with his emergency flashers on. The posted speed limit was sixty-five miles per hour. The weather was clear and the road was dry.

¶8    In his rear-view mirror, Davis noticed a black car coming up behind him. The black car then switched lanes, and a white car suddenly appeared behind it.

¶9    The white car was a Volkswagen Jetta driven by Raul Lopez. In the passenger seat next to him was Emilio Martinez-Arroyo. The moment the black car changed lanes, Lopez—then traveling at about sixty miles per hour—hit the trailer squarely from behind. The Jetta's driver, whose view of the trailer would have been obstructed by the black car until that last moment, made no attempt to brake or avoid the collision. The trailer's edge impacted the top of the Jetta's passenger compartment and the remainder of the Jetta slid underneath the trailer, as pictured below. The trailer had no underride protection on it. Lopez and Martinez-Arroyo were killed on impact.

¶10   Martinez-Arroyo's wife, Yesneiri Maldonado-Velasquez, sued RJP for negligence, alleging that RJP breached its duty of care by (1) not having underride protection on the trailer and (2) operating the truck and trailer in an unreasonable manner. To support the first claim, she proposed calling Byron Bloch (Expert),

---

[1] This case comes to us after a jury trial, but the relevant ruling for appeal was on RJP's pretrial summary judgment motion. Given this posture, we recite the facts and reasonable inferences in the light most favorable to Maldonado-Velasquez at the time of that motion. *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, n.5, 423 P.3d 1150.

who would testify about the dangers of underride and means to prevent it.[2]



**Figure 2. 1998 VW Jetta Under 1979 TwamCo Flatbed Trailer on May 29, 2015 (UHP Photograph)**

¶11 RJP moved for summary judgment, arguing that (1) the relevant duty—one to upgrade the trailer beyond minimum federal safety standards—did not exist and (2) the undisputed evidence showed that Lopez was fully at fault for the accident. On the first point, the district court acknowledged that there was a statutory duty in Utah to not operate vehicles in an unsafe condition. *See* UTAH CODE § 41-6a-1601(1)(a)(i) ("A person may not operate or move and an owner may not cause or knowingly permit to be operated or moved on a highway a vehicle or combination of vehicles that . . . is in an unsafe condition that may endanger any person."). But it concluded that this duty was limited by another section of the code stating that federal motor vehicle safety regulations "supercede any conflicting provisions" of the Utah traffic code "pertaining to commercial motor carriers." *Id.* § 41-6a-206; *see also id.* § 41-6a-1601(6)(a)(i) (similar). And both parties—eventually—agreed that the trailer met the federal standards.

---

[2] Maldonado-Velasquez also sued the utility trailer's manufacturer—the aptly named Utility Trailer Manufacturing Company—for products liability and negligence. The parties stipulated to dismissing those claims, which the district court did. Maldonado-Velasquez then substituted Twamco Trailer Manufacturing Co., Inc. for Utility. When Twamco failed to respond to the complaint, the district court entered default against it. Those rulings are not before us.

¶12 Maldonado-Velasquez responded that compliance with federal safety standards did not preclude the statutory and common-law duties. RJP countered that Maldonado-Velasquez's argument simply repackaged a products liability claim for enhanced injury as a negligence claim. RJP relatedly moved to exclude Expert's testimony on underride dangers and injury prevention.

¶13 The district court granted RJP's motions in part. On summary judgment, it ruled that RJP had no duty to upgrade the trailer and granted judgment on the first claim. Though it agreed with RJP that it had a statutory duty to operate the trailer safely, it decided that the factors outlined in *B.R. ex rel. Jeffs v. West*, 2012 UT 11, 275 P.3d 228—particularly the public policy factor—outweighed recognizing a specific duty to "augment or modify" the trailer beyond federal safety standards.

¶14 Because the district court concluded that RJP had no duty to alter the trailer, it also granted RJP's motion to exclude Expert's testimony to the extent the testimony addressed the trailer's alleged underride deficiencies and opined that the trailer design caused Martinez-Arroyo's death. But the district court denied RJP's motion on the negligent operation portion of the claim.

¶15 Maldonado-Velasquez believed that this ruling did not prevent her from arguing that RJP operated the trailer in an unsafe way, which might have been addressed in various ways other than modifying the trailer—such as driving on a different road or buying a different trailer.

¶16 RJP then moved to exclude any "evidence, opinion, and argument" that the trailer was in a dangerous condition or affected the survivability of the crash.

¶17 The district court granted RJP's motion to prevent Maldonado-Velasquez from presenting evidence that the trailer was in a dangerous condition or that its configuration caused the decedents' deaths. In the court's reading, the Utah Code "appears to acknowledge" that the duty "does not . . . require . . . operators to improve their vehicle beyond . . . federal motor vehicle safety standards." *See* UTAH CODE § 41-6a-206 ("Federal Motor Carrier Safety Regulations supercede any conflicting provisions of this chapter pertaining to commercial motor carriers."). From that text, the court inferred that imposing liability premised on a lack of additional safety measures (such as underride protection) would

"conflict" with federal law and therefore could not be part of the relevant duty analysis.

¶18  The district court also forbad Expert from testifying that the decedents would have survived a crash with other vehicles or objects—that is, testimony that the trailer's condition caused their deaths. But it permitted Maldonado-Velasquez to argue that RJP operated its trailer unreasonably by "traveling too slowly, on the road at issue . . . or upon any other basis not precluded" by its order. And it allowed Expert to testify that rear-end accidents are generally a surprise.

¶19  The jury found that RJP bore no fault for the collision. Maldonado-Velasquez timely appealed.

## ISSUES AND STANDARDS OF REVIEW

¶20  Maldonado-Velasquez raises two issues on appeal. First, she challenges the district court's ruling that RJP owed "no duty to improve [its] trailer" beyond minimum federal requirements. The existence of a duty is a legal ruling we review for correctness, *Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405 (Utah 1998), giving "no particular deference" to the lower court's decision, *State v. Wood*, 2023 UT 15, ¶ 14, 532 P.3d 997  (cleaned up).

¶21 Second, she challenges the district court's decision to exclude Expert's testimony about the trailer's dangerousness. "Two . . . standards . . . apply" when reviewing exclusion of evidence. *Northgate Vill. Dev., LC v. City of Orem*, 2019 UT 59, ¶ 14, 450 P.3d 1117 (quoting *State v. Griffin*, 2016 UT 33, ¶ 14, 384 P.3d 186). "Correctness applies to the legal questions underlying the admissibility of evidence." *Id.* (cleaned up). "Abuse of discretion applies to the . . . decision to admit or exclude evidence and to . . . determination[s] regarding the admissibility of expert testimony." *Id.* (cleaned up); *see also Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29, ¶ 41, 513 P.3d 729.

## ANALYSIS

¶22  Maldonado-Velasquez first argues that the district court erred in applying the *Jeffs* factors to decide the scope of duty. *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228. We agree.

¶23  We made clear in *Jeffs* that the duty element in tort cases is not a "case-by-case" or "fact[-]specific" inquiry; rather, it is a broad and "categorical" question for classes of tort claims. *Id.* ¶¶ 22–23. When determining whether a statute or ordinance sets the relevant

duty, we use sections 286 and 288 of the Restatement (Second) of Torts as guidelines. *Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶ 44, 424 P.3d 866. Applying these guidelines, we will impose a tort duty when persuaded that the purpose of the enactment is to protect a class of persons (that includes the plaintiff) against the specific type of harm that actually occurred. *Id.* ¶ 45. The class of tort claim applicable here is operating safe vehicles on the highway. The Utah Code provides that "[a] person may not operate or move and an owner may not cause or knowingly permit to be operated or moved on a highway a vehicle or combination of vehicles that . . . is in an unsafe condition that may endanger any person." UTAH CODE § 41-6a-1601(1)(a)(i). This statute protects any person traveling on a highway from the exact type of harm that allegedly occurred in this case. This establishes the "broad, categorical" duty applicable here. *Jeffs*, 2012 UT 11, ¶ 23. And with this categorical duty established, the duty inquiry should have ended.

¶24 But the district court was persuaded to go further, applying *Jeffs* to decide the existence of a new, case-specific, and narrow duty: to upgrade a trailer. We acknowledge that at the time of the district court's summary judgment decision, "some confusion" persisted among litigants and lower courts about how and when to use *Jeffs*. *D.W. v. FPA Sandy Mall Assocs.*, 2024 UT 32, ¶ 21, 554 P.3d 1052; *see also id.* (citing cases). But we have since made clear "that a *Jeffs* analysis is necessary only when a party seeks to establish a previously unrecognized duty for a category of cases" and "does not apply when a plaintiff invokes a categorical duty already recognized under Utah law." *Id.*; *see also Davis v. Wal-Mart Stores Inc.*, 2022 UT App 87, ¶¶ 12, 15, 514 P.3d 1209 (explaining that the district court "need not have engaged in a *Jeffs* analysis at all" where the relevant duty was already established). And there is no question here that the duty to operate vehicles safely on the roads applies to RJP's operating its truck and trailer on a Utah road.

¶25 The district court's primary concern appears to have been Utah Code section 41-6a-206, which states that "Federal Motor Carrier Safety Regulations supercede any conflicting provisions of this chapter pertaining to commercial motor carriers." *See also* UTAH CODE § 41-6a-1601(6)(a)(i) (similar). It interpreted this section essentially as preempting any duty in excess of federal regulation. But that is not how preemption works in this area.

¶26 It is true that federal regulations can preempt inconsistent state laws. *See Lousiana Public Service Communication v. FCC*, 476

U.S. 355, 369 (1986). But not necessarily; it depends on the type of preemption that applies.

¶27 Preemption has several strains: express preemption, in which Congress explicitly preempts a given state law, *see, e.g.*, *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977); field preemption, in which a scheme of federal regulation becomes so extensive and pervasive that states are forbidden from legislating in that area at all, *see, e.g.*, *Gade v. National Solid Wastes Management Association*, 505 U.S. 88, 98 (1992); obstacle preemption, in which state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," and must give way, *id.* (cleaned up); and conflict preemption, under which state laws fail because "compliance with both federal and state regulations is a physical impossibility," *id.* (cleaned up).

¶28 The relevant regulations are the Federal Motor Carrier Safety Regulations. *See* 49 C.F.R. pts. 390–99. The preemption provision in those regulations states: "Except as otherwise specifically indicated [these provisions are] not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, *the compliance with which would not prevent full compliance with these regulations by the person subject thereto.*" *Id.* pt. 390.9 (emphasis added); *see also id.* § 393.1(a) ("The rules in this part establish *minimum* standards for commercial motor vehicles . . . ." (emphasis added)).

¶29 As many courts have recognized, this sets up a conflict preemption scheme—that is, federal law is a floor, not a ceiling, in this area, and state law falls only if it is impossible to comply with both. *See, e.g.*, *Interstate Towing Ass'n, v. City of Cincinnati*, 6 F.3d 1154, 1158 (6th Cir. 1993) ("Since the City ordinance requires additional equipment . . . not required under federal regulations, and since the City imposes at least the same if not more stringent requirements than do the federal regulations in the areas of overlap . . .the City ordinance is not preempted by [these regulations.]"); *Specialized Carriers & Rigging Ass'n. v. Virginia*, 795 F.2d 1152, 1158 (4th Cir. 1986) (holding that state statute requiring blinking lights under certain circumstances was not preempted by federal regulation not requiring blinking lights under the same circumstances); *Peters v. Great Dane Trailers, Inc.*, No. 94CV0068, 1996 WL 698028, *23 (N.D. Ind. Oct. 10, 1996) (explaining that federal regulations do not preempt state laws that have higher road safety requirements than federal law).

¶30   The Utah statute that concerned the district court likewise uses conflict language. UTAH CODE § 41-6a-206 ("Federal Motor Carrier Safety Regulations *supercede any conflicting provisions of this chapter* pertaining to commercial motor carriers." (emphasis added)).

¶31   The question then becomes whether state and federal law can coexist here. They can. State law can impose a level of duty exceeding federal motor carrier regulations because it is possible to adhere to such a standard without making it impossible to comply with that federal floor. Of course, compliance with the state duty to operate safe equipment, where there is inconsistent evidence, is a question for a factfinder. The district court erred in concluding otherwise.

¶32   The district court's duty ruling also affected its evidentiary rulings excluding Expert's testimony about the trailer.[3] Because those evidentiary rulings were premised on the legally incorrect lack-of-duty ruling, the district court abused its discretion by excluding Expert's testimony on the basis that it was irrelevant. *Northgate Vill. Dev., LC v. City of Orem*, 2019 UT 59, ¶¶ 14, 27, 450 P.3d 1117; *see also Lund v. Brown*, 2000 UT 75, ¶ 9, 11 P.3d 277 (holding that decision premised on flawed legal conclusions constitutes abuse of discretion).

¶33   RJP argues that even if the district court erred in defining the duty and in excluding certain evidence, those errors were harmless because the jury found that RJP bore no fault for the collision. He relatedly argues that the verdict provides an alternative basis to affirm because the only possible claims left go to the trailer design, which cannot be a basis for RJP's liability. We see things differently.

¶34   It is true, as RJP points out, that claims about negligence creating an increased risk of harm come from products liability law,

---

[3] The district court concluded that "[t]he duty . . . does not go so far as to require motor vehicle operators to improve their vehicle beyond the standard set by the federal motor vehicle safety standards." And "testimony from [Expert] . . . is not helpful to the trier of fact, as such testimony invites the jury to find that [RJP] breached a duty that does not exist." And finally, "there is no duty under Utah law" to "modify or improve" a vehicle beyond federal standards.

and RJP is not the product manufacturer. But there is still room for a claim that it improperly *used* an allegedly defective trailer.

¶35 As noted, an enhanced-injury claim asserts that injuries were worse than they ought to have been. *Meekins v. Ford Motor Co.*, 699 A.2d 339, 340–41 (Del. Super. Ct. 1997). Utah recognizes this kind of liability, having adopted section 16(a) of the Restatement (Third) of Torts: Products Liability. *Egbert v. Nissan Motor Co.*, 2010 UT 8, ¶ 6, 228 P.3d 737; *see, e.g., Blank v. Garff Enters. Inc.*, 2021 UT App 6, ¶ 26, 482 P.3d 258.

¶36 The concept was born of products liability, specifically car crash litigation. *See* RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 16 cmt. a (A. L. I. 1998). The seminal case in this area is *Larsen v. General Motors Corp.*, 391 F.2d 495, 502–03 (8th Cir. 1968), which spawned the "crashworthiness" doctrine: the idea that a car manufacturer should expect that its products will be in crashes from time to time, and design cars to minimize the risk of injuries in collisions. So, regardless of the fault of the driver for the crash itself, the car manufacturer may still be liable for the extent of additional injuries or damages that resulted from a design defect. *See* Thomas V. Harris, *Enhanced Injury Theory: An Analytic Framework*, 62 N.C. L. REV. 643, 643–44 (1984) (Harris). For example, say a car hits an object and the seat belt system fails, ejecting the driver from the car and causing the driver severe injuries. If the seat belt had worked properly, the injuries would have been minor or nonexistent. "Although the manufacturer of the car did not cause the collision, the manufacturer is liable for any enhanced injuries sustained by the occupant as a result of the failure of the negligently designed seat belt." *Meekins*, 699 A.2d at 341.

¶37 But while enhanced injury had its beginnings in—and usually involves—product design and strict liability, "[t]he concept of recovery for enhanced injury . . . is far broader." Harris, 62 N.C. L. REV. at 648; *see also Ford Motor Co. v. Hill*, 404 So. 2d 1049, 1052 (Fla. 1981) (holding that plaintiff claiming enhanced injury can proceed in strict liability or negligence); *Warren v. Colombo*, 377 S.E.2d 249, 252 (N.C. Ct. App. 1989) ("The enhanced injury concept has been grounded in other jurisdictions in both general negligence law and product liability."). "The theory should be applied to any situation in which an object or conduct does not cause contact but wrongfully causes damage from the contact to be greater than it would have been had a deficiency in the object or conduct not

existed." Harris, 62 N.C. L. REV. at 649 (footnote omitted). So, an enhanced-injury claim can go forward.

¶38 The negligent operation claim is also back in play. The jury came to its no-fault verdict without what we have now held was relevant evidence about RJP's use and operation of the trailer. This additional evidence of RJP's alleged negligence may affect a jury's assessment of, well, RJP's negligence. We thus decline to affirm—even partially—on the alternative basis of the verdict.

## CONCLUSION

¶39 Where a broad and general duty exists in Utah law that applies to the relevant circumstances, most case-specific questions will be relevant to the other tort elements—breach, causation, and damages. Here, Utah law established a broad duty to operate safe equipment on a roadway. That should have ended the duty inquiry, but the district court went further and inappropriately narrowed the duty. It also erred by rejecting testimony and evidence on what was a viable enhanced-injury theory. We reverse and remand for proceedings not inconsistent with this opinion.

––––––––––––